# Exhibit 21

| | |
|---|---|
| MONICA SULLIVAN | In the Circuit Court for |
| *on her own behalf and on behalf of all others similarly situated,* | Montgomery County |
| Plaintiff, | |
| | Case No. 487489-V |
| v. | Track 6 |
| YES ENERGY MANAGEMENT, INC. | Hon. Harry C. Storm |
| and | |
| YARDI SYSTEMS, INC. 30 S. Fairview Ave. Goleta, CA 93117 **Serve on:** CSC-Lawyers Incorporating Service Company 7 St. Paul Street Suite 820 Baltimore, MD 21202, | |
| Defendants. | |

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1.    Plaintiff Monica Sullivan ("Plaintiff" or "Ms. Sullivan"), on behalf of herself and all others similarly situated, sues Yardi Systems, Inc. ("Yardi") and its wholly owned subsidiary YES Energy Management, Inc. ("YES Energy") on a class-action basis.

2.    Yardi and YES Energy are engaged in the business of directly and indirectly collecting rent from Maryland residential tenants – like Plaintiff and the

members of the Classes defined below ("Class Members") – on behalf of the tenants' third-party landlords. In the course of this collection activity, Yardi and YES Energy each add to the tenants' debt burden, because the tenants are charged extra fees to pay Yardi and YES Energy *for* their "services" in collecting debt from the tenants.

3.      But the extra fees charged for Yardi's and YES Energy's "services" are illegal and uncollectible. These fees should never have been charged, and the fees that Defendants have collected should be returned to Plaintiff and Class Members.

4.      For example, Yardi routinely charges and collects fees from Plaintiff and Class Members for collecting rent from them using methods of payment including ACH, credit card, or debit card ("Pay-to-Pay Fees"). Yardi's Pay-to-Pay Fees are not expressly authorized by the lease agreements that create the debts being collected, and they are not permitted by applicable law. They are, therefore, *per se* unlawful under Maryland's Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201, *et seq.* ("MCDCA"). In turn, Yardi's violations of the MCDCA are *per se* "unfair, abusive, or deceptive trade practices" which violate the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, *et seq.* ("MCPA")

5.      Not only are the Pay-to-Pay Fees illegal, but Yardi cannot charge any fees for debt collection in Maryland – it is not licensed as a collection agency, even though Yardi characterized itself as a "collection agent" in its E-mails to Plaintiff. The Maryland Collection Agency Licensing Act, Md. Code Ann., Bus. Reg. §§ 7-101, *et seq.* ("MCALA") requires all collection agencies to be licensed and prohibits

2

unlicensed debt collection, and, in addition, Yardi's lack of MCALA licensing is yet another *per se* violation of the MCDCA and MCPA. Yardi's rent collection business is thus unlawful on a number of fronts, and it cannot legally charge Plaintiff and other consumers for its illegal enterprise.

6.      That is not all. Yardi uses its wholly owned subsidiary, YES Energy, as a part of its scheme to extract additional illegal payments from Maryland residential tenants. YES Energy sends bills to Plaintiff and certain Class Members for their rent, demanding payment. For doing that, YES Energy billed Plaintiff and those Class Members an additional "Administration Fee" to pay for YES Energy's "services" in collecting debt from them. But YES Energy cannot charge any fees for debt collection in Maryland, because it is not licensed as a collection agency, either. Its collection agency activity, like Yardi's, also violates the MCDCA, the MCPA, and the MCALA.

7.      The Maryland Legislature enacted the MCDCA, the MCPA, and the MCALA to protect Marylanders like Plaintiff and Class Members. The Financial Consumer Protection Act of 2018 affirmatively amended the MCDCA to bar debt collectors like Yardi from collecting add-on fees that are not enumerated in the agreement creating the debt or permitted by statute – so that Marylanders like Plaintiff and the Yardi Class would not be burdened with charges like Yardi's Pay-to-Pay Fees. At the same time, the Maryland Legislature made it a *per se* violation of the same statute to act as a collection agency without an MCALA license – to protect Marylanders like Plaintiff and Class Members from having dealings with

3

unlicensed collection agencies like Yardi and YES Energy.

8.       Yardi and YES Energy have ignored the mandates of the MCDCA, the MCPA, and the MCALA. They have flouted the Legislature's attempt to end their harmful and abusive rent collection practices and have chosen to continue to perpetrate the conduct those laws were designed to stop.  Instead of heeding the Maryland laws protecting Plaintiff and Class Members, Yardi and YES Energy have perversely demanded that Plaintiff and Class Members pay Yardi and YES Energy for abusive business practices that violate those protective laws. This has damaged Plaintiff and Class Members by, among other things, taking money from Plaintiff and Class Members to pay for an illegal, unfair, and abusive course of conduct perpetrated against them and in violation of laws designed to protect them.

9.       Accordingly, Plaintiff brings claims on behalf of two Classes. The "Yardi Class" consists of:

> All persons who, on or after January 24, 2019, paid a fee imposed or collected by Yardi for making a payment of charges arising from a lease agreement for a Maryland residence, where the lease did not expressly authorize the payment of such a fee.

10.      The "YES Energy Class" consists of:

> All persons to whom YES Energy sent a bill, concerning a Maryland residence, which included an Administration Fee, on or after October 4, 2018.

11.      Excluded from each Class are all employees, officers and directors of Yardi, YES Energy and their parent or subsidiary companies and predecessors and

successors, and all employees of the Court.

## Parties

12.     Monica Sullivan is a natural person who is a resident and citizen of the State of Maryland.

13.     Yardi is a California corporation with its principal place of business in California.

14.     YES Energy is a Colorado corporation with its principal place of business in Colorado. YES Energy is a wholly owned subsidiary of Yardi.

## Jurisdiction and Venue

15.     This Court has subject-matter jurisdiction over this case pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 1-501 and 4-402(e)(2).  This Court has personal jurisdiction pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 6-102 and 6-103(b), as Yardi and YES Energy transact business and perform work and service in the State of Maryland, contract to supply services in the State of Maryland, and regularly do and solicit business and engage in other persistent courses of conduct in the State of Maryland, including the business described in this Complaint.

16.     Venue is proper in this Court under Md. Cts. & Jud. Proc. Code Ann. §§ 4-402(e)(2) and 6-201, as, among other things, the amount in controversy in this case exceeds $15,000.00 and because Yardi and YES Energy carry on a regular business and habitually engage in vocation in Montgomery County, Maryland. Among other things, Yardi and YES Energy direct their activity described in this Complaint to persons including residents of Montgomery County, Maryland, and

5

contract to perform that business with respect to properties located in Montgomery County, Maryland.

## Factual Background

*A.*　　　*Defendants' Maryland Collection Agency Businesses*

17.　　　Yardi and YES Energy are affiliated debt collection agencies, which specialize in the collection of residential rent and associated charges for residential multifamily housing landlords.

18.　　　Yardi and YES Energy market their collection agency services to residential landlords across Maryland. Yardi and YES Energy used the services of their individual employees to sell, to the landlords of Plaintiff and other Class Members, collection systems used for the collection of consumer claims for rent and associated charges.

19.　　　Under Yardi and YES Energy's collection scheme, YES Energy bills residential Maryland tenants, soliciting payment of consumer claims for rent and associated charges, while Yardi collects payment of consumer claims for rent and associated charges. Yardi collects payment of consumer claims for rent and associated charges both from tenants who have been billed by YES Energy as well as from tenants who have not been billed by YES Energy.

　　　*1. Yardi's Collection Agency Activity*

20.　　　Yardi is engaged in the business of collecting, on behalf of residential landlords, consumer claims for rent and associated charges arising from the lease of residential real property.

21.     Yardi contracts with multiple residential landlords to collect rent and associated charges from residential tenants. Yardi contracts with the landlords that Yardi will accept payments of rent and associated charges from the landlord's residential tenants, on the landlord's behalf, over the Internet, in ACH, credit card, and debit card transactions.

22.     Yardi, for example, establishes numerous so-called "Resident Portals" and smartphone apps which it uses to collect rent and associated charges from Maryland residential tenants over the Internet.

23.     Yardi's Resident Portals and apps are platforms which accept payments of rent and associated charges from tenants.

24.     When a residential tenant logs in to a Yardi Resident Portal or app, the resident can make a payment of rent and associated charges from the Resident Portal or app and can also set up automatic monthly payments of rent and associated charges.

25.     Plaintiff and each member of the Yardi Class made a payment of rent and associated charges to Yardi, and in each such transaction Yardi collected the payment of rent and associated charges on behalf of its client – the Yardi Class member's landlord. Yardi then transferred the value of the payment of rent and associated charges (less any Pay to Pay fee) to the Yardi Class member's landlord.

26.     Yardi collected one or more Pay-to-Pay Fees from Plaintiff and each Yardi Class Member for collecting one or more payments from them.

27.

7

28.     The payments Yardi collected from Plaintiff and Yardi Class Members consisted of money owed or said to be owed by a resident of the State, and arose from transactions in which, for family, household, or personal purposes, the resident sought or got credit, money, personal property, real property, or services. In particular, Yardi collected money from Plaintiff and Yardi Class Members for alleged debts which arose from residential leases and in connection with their residential tenancies, for monthly rent and associated charges. Accordingly, the amounts Yardi collected from Plaintiff and Yardi Class Members constitute "consumer claims" under MCALA § 7-101(f).

29.     Yardi's business in Maryland, including its activities in its dealings with Plaintiff and Class members, is the business of 1) collecting for third-party landlords, and soliciting from tenants, payments for consumer claims; as well as 2) giving, selling, attempting to give or sell to landlords, and using, for collection of those consumer claims, a series or system of forms or letters that indicate directly or indirectly that a person other than the owner is asserting the consumer claim; and, 3) employing the services of an individual or business to solicit or sell a collection system to be used for collection of those consumer claims. *See* MCALA § 7-101(d). As a result, Yardi is a "collection agency" under MCALA. *See id*.

30.     In particular, Yardi collected from Plaintiff and each Yardi Class Member amounts allegedly due to third-party landlords for monthly rent and associated charges, and established facilities for electronically collecting payment of monthly rent and associated charges, through Resident Portals, apps, and

8

otherwise. Although Yardi was collecting these charges on behalf of third-party landlords, the payment portals and apps indicated that they were operated by Yardi, and that Yardi was collecting the charges. Yardi employed numerous persons to market and sell to landlords its payment collection system, which Yardi used to collect consumer claims from Plaintiff and Yardi Class Members.

31.    Yardi advertises to landlords that its payment system will "[c]ollect rent more quickly!" It advertises that "[o]nline rent payments make it a lot easier for you to collect rent." It advertises that "[c]ollecting rent online is more convenient, more efficient and cuts down on trips to the bank." Yardi also characterized itself as a "collection agent" in communications with Plaintiff and Yardi Class Members.

32.    By undertaking its activities in collecting payments for rent and associated charges from Plaintiff and Yardi Class Members, Yardi is engaged in "collecting for, or soliciting from another, a consumer claim," Md. Code Ann., Bus. Reg. § 7-101(d)(1)(i) and is a collection agency under Maryland law.

33.    Yardi also fits the definition of a collection agency under Maryland law because it "employ[s] the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim." MCALA § 7-101(d)(4). For example, Yardi employs the services of individuals to sell, to multifamily housing owners, its collection system for collection of residential tenants' rent and associated charges through Internet payment portals. The landlords of Plaintiff and each Yardi Class Member purchased or licensed or

otherwise acquired, in exchange for consideration, the services of Yardi's collection system, which accepted payment of rent and associated charges from Plaintiff and each Yardi Class Member.

34.     Yardi is not related by common ownership with any of the landlords on whose behalf Yardi engages in collection agency activity in Maryland. Yardi has never owned the claims for payment of charges which arose from residential leases that it has collected from Plaintiff or other residential tenants in Maryland.

35.     Yardi is in the business of, and dedicated to, the collection, directly or indirectly, of consumer debts including alleged rent and utilities from residential tenants for its landlord customers.

36.     Yardi intended to collect from Plaintiff and Yardi Class Members alleged amounts due to third-party landlords through its collection system and the actions described in this Complaint.

37.     Indeed, Yardi's collection system worked as a collections process. Yardi collected rent and associated charges from Plaintiff and the Yardi Class members through its collection system.

### 2.  YES Energy's Collection Agency Activity

38.     YES Energy is also engaged in the business of soliciting from residential tenants consumer claims for rent and associated charges arising from the lease of residential real property.

39.     YES Energy contracts with multiple residential landlords to solicit from the landlords' tenants rent and associated charges arising from residential

leases. Among other things, YES Energy contracts with its landlord clients that YES Energy will send the landlord's tenants bills assessing charges arising from residential leases, and demanding payment of those charges.

40.    The bills that YES Energy sent to Plaintiff and the YES Energy Class Members sought payment of money owed or said to be owed by a resident of the State, and arose from transactions in which, for family, household, or personal purposes, the resident sought or got credit, money, personal property, real property, or services. In particular, the bills that YES Energy sent to Plaintiff and Class Members concerned alleged debts which arose from consumer water, rent, and other services provided to residential tenants in connection with their residential tenancies, debts which arose under residential leases.

41.    YES Energy's business in Maryland, including its activities in its dealings with Plaintiff and Class Members, is the business of 1) collecting for landlords, and soliciting from tenants, payments for consumer claims; as well as 2) giving, selling, attempting to give or sell to landlords, and using, for collection of those consumer claims, a series or system of forms or letters that indicate directly or indirectly that a person other than the owner is asserting the consumer claim; and, 3) employing the services of an individual or business to solicit or sell a collection system to be used for collection of those consumer claims. *See* MCALA § 7-101(d).

42.    In particular, YES Energy sent bills to Plaintiff and each Class member demanding payment of amounts allegedly due to third-party landlords,

11

including charges denominated as, for example, "Base Rent," "Trash Recovery," "Late Fee," "Court Costs," and "Water Charge." Although YES Energy was collecting these charges on behalf of the landlord, and soliciting those charges from the Plaintiff and each Class Member on behalf of the landlord, the bills by YES Energy to Plaintiff and each Class Member indicated that the bills were from YES Energy. YES Energy employed numerous persons to market and sell to landlords its utility collection system, which YES Energy used to send the bills at issue to Plaintiff and Class Members.

43.     By undertaking its activities in billing rent and associated charges, including alleged "utilities," to residential tenants like Plaintiff and YES Energy Class Members, YES Energy is engaged in "collecting for, or soliciting from another, a consumer claim," MCALA § 7-101(d)(1)(i), and is a collection agency under Maryland law.

44.     YES Energy also fits the definition of a "collection agency" under Maryland law because it is engaged in "giving, selling, attempting to give or sell to another, or using, for collection of a consumer claim, a series or system of forms or letters that indicates directly or indirectly that a person other than the owner is asserting the consumer claim." MCALA § 7-101(d)(2).

45.     For example, YES Energy's bills are forms or letters which are each titled in the name of YES Energy.

46.     YES Energy gave and sold and used a series or system of forms or letters, such as YES Energy's bills which were sent to Plaintiff and Class Members,

which directly or indirectly indicated that YES Energy was asserting consumer claims against Plaintiff and Class Members.

47.     YES Energy also fits the definition of a collection agency under Maryland law because it "employ[s] the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim." MCALA § 7-101(d)(4).

48.     For example, YES Energy employs the services of individuals to sell, to multifamily housing owners, its collection system for collection of residential tenants' charges, listed in YES Energy's bills to Plaintiff and YES Energy Class Members, as well as service fees. The landlords of Plaintiff and each YES Energy Class Member purchased or licensed or otherwise acquired, in exchange for consideration, the services of YES Energy's collection system which resulted in the computer-generated bills sent to Plaintiff and each YES Energy Class Member.

49.     YES Energy is not related by common ownership with any of the landlords on whose behalf YES Energy engages in collection agency activity in Maryland. YES Energy has never owned the claims for payment of rent, trash recovery, late fees, court costs, water charges, or other utility charges that it has billed to Plaintiff or other residential tenants in Maryland.

50.     YES Energy is in the business of, and dedicated to, the solicitation and collection, directly or indirectly, of consumer claims including alleged rent and utilities from residential tenants for its landlord customers.

51.     YES Energy's advertising confirms its regular business as a collection

13

agency. Not only does YES Energy send bills to Plaintiff and each member of the

YES Energy Class, but YES Energy's website advertises that by logging into its

website, tenants may be able to "make online payments."

52.     The collection service that YES Energy's website offers is operated by

Yardi.

53.     The entire purpose of YES Energy's business is to induce tenants to

pay for alleged amounts allegedly owed to third-party landlords.

54.     YES Energy intended to induce Plaintiff and Class Members to pay

alleged amounts due to third-party landlords through its billing practices and the

actions described in this Complaint.

55.     Indeed, YES Energy's collection system worked as a collections

process. YES Energy sent bills to Plaintiff and each and every Class Member to

collect allegedly due rent and associated charges. Plaintiff and Class Members paid

amounts alleged to be due on those bills, because of the bills YES Energy sent.

        3.   *Defendants' Collection Agency Businesses Violate Maryland Law*

56.     MCALA requires any person doing business as a "collection agency" in

the State to have a license. *See* MCALA § 7-301(a). MCALA affirmatively forbids

any person who is not licensed from acting as a collection agency. *See* MCALA § 7-

401(a).

57.      When Yardi and YES Energy directly and indirectly solicited, collected

and sought to collect consumer claims from Plaintiff and Class Members, and

otherwise engaged in the activity described in this Complaint, they were each

acting as a "collection agency" within the meaning of MCALA.

58.     Although Yardi and YES Energy are, and at all times relevant to this Complaint have been, collection agencies within the meaning of MCALA, neither Yardi nor YES Energy have or had a Maryland license to act as a collection agency, as required by MCALA.

59.     Accordingly, neither YES Energy nor Yardi is permitted to act as a collection agency, and neither may engage in the collection activity described in this Complaint. Yardi is not permitted to collect payment of the consumer debts asserted in YES Energy's bills, or any other consumer debts – and it is certainly not permitted to charge Plaintiff and the Yardi Class members Pay-to-Pay Fees for conducting its unlawful collection agency activity. YES Energy is not permitted to bill Plaintiff and the Class to induce them to pay consumer debts – and it is certainly not permitted to charge Plaintiff and the YES Energy Class members an Administration Fee for conducting its unlawful collection agency activity. Neither Yardi nor YES Energy may otherwise directly or indirectly seek to collect debts allegedly owed by Plaintiff and the Class to their landlords, or to engage in the other activity regulated by MCALA.

60.     Yardi and YES Energy unlawfully undertook actions in violation of MCALA in their dealings with Plaintiff and Class Members, including directly and indirectly collecting and attempting to collect consumer claims by demanding and collecting payment of rent, alleged utility charges, and other fees; by generating correspondence demanding payment of alleged rent, allocated utility charges, and

other fees; and by undertaking other collection agency activity, all without being licensed as collection agencies as required by Maryland law.

61.      In addition, the MCDCA prohibits engaging in unlicensed debt collection activity in violation of MCALA. *See* MCDCA § 14-202(10). Defendants' unlicensed debt collection activity thus violated not only MCALA, but also the MCDCA.

62.      And any violation of the MCDCA is also a *per se* unfair, abusive or deceptive trade practice which violates the MCPA. *See* MCPA § 13-301(14)(iii).

### 4.  Defendants' Collection Fees Are Unlawful and Damaged Plaintiff and Class Members

63.      Yardi and YES Energy each charged fees to Plaintiff and Class Members for their illegal collection activity. Yardi charged Plaintiff and the Yardi Class Members Pay-to-Pay fees, and YES Energy charged Plaintiff and the YES Energy Class Members Administration Fees.

64.      The Pay-to-Pay Fees and Administration Fees are collection fees – they were imposed on Plaintiff and Class Members to pay for Yardi and YES Energy's collection activity.

65.      The Pay-to-Pay Fees assessed by Yardi against Plaintiff and Yardi Class Members are *per se* unlawful under the MCDCA; and those same fees and YES Energy's Administration Fees are also unlawful under the MCDCA because they are charged to pay Yardi and YES Energy for undertaking unlawful actions in violation of Maryland law.

66.     The MCDCA regulates the actions of "debt collectors," which include not only collection agencies regulated by MCALA, but also broadly include any "person collecting or attempting to collect an alleged debt arising out of a consumer transaction." MCDCA § 14-201(b). Yardi and YES Energy are both debt collectors under the MCDCA. Yardi and YES Energy collected and attempted to collect the rent and associated charges of Plaintiff and Class Members by billing them for the rent and associated charges and collecting the rent and associated charges.

67.     Section 14-202(11) of the MCDCA prohibits "[t]he collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

68.     The Pay-to-Pay Fees collected by Yardi from Plaintiff and Yardi Class Members are not expressly authorized by the agreement creating the debt – the Yardi Class Members' lease agreements – or permitted by law. They are unlawful and illegal under the MCDCA. When Yardi collected these unlawful and uncollectible fees, which are prohibited by the MCDCA, it damaged Plaintiff and Class Members.

69.     In addition, section 14-202(10) of the MCDCA prohibits debt collectors from "[e]ngag[ing] in unlicensed debt collection activity in violation of the Maryland Collection Agency Licensing Act." As described above, Yardi and YES Energy engaged in unlicensed debt collection activity in violation of the MCALA. The Pay-to-Pay Fees and Administration Fees assessed by Yardi and YES Energy were

17

assessed to pay Yardi and YES Energy for their debt collection activity. However, that activity was unlicensed and in violation of MCALA. When Yardi and YES Energy engaged in unlicensed collection activity in violation of the MCDCA, and Plaintiff and Class Members were required to pay for that unlicensed collection activity, Yardi and YES Energy's violations of the MCDCA damaged Plaintiff and Class Members.

70.    Yardi and YES Energy damaged Plaintiff and Class Members by taking money from them in the form of illegal and uncollectible Pay-to-Pay Fees and Administration Fees, which were illegal and uncollectible.

71.    Yardi's and YES Energy's method of business in Maryland, in acting as collection agencies when neither were licensed as a collection agency, damaged Plaintiff and other Class Members. For example, Plaintiff and other members of the Class faced an alleged obligation to pay "Administration Fees" and Pay-to-Pay Fees as a direct and proximate result of, and for, Yardi's and YES Energy's collection activity, even though that activity was against the law and no fees should have been assessed to Plaintiff and other Class Members for Yardi's and YES Energy's perpetration of illegal business practices.

72.    Neither Yardi, nor YES Energy, nor anyone else is entitled to assess, charge or collect Pay-to-Pay Fees or Administration Fees for Yardi's and YES Energy's actions in violation of Maryland law. These fees, which are imposed to pay Yardi and YES Energy for their collection activity, when Yardi and YES Energy were not licensed as collection agencies and were not licensed to engage in any other

consumer debt collection activity, are unlawful and damaged Plaintiff and Class

Members when those fees were assessed on their accounts, and Plaintiff and Class

Members faced an alleged obligation to pay those fees. Plaintiff and Class Members'

payment of these fees also damaged them.

73.     Yardi and YES Energy are not entitled to be paid for undertaking an

unlawful course of business in Maryland, and Plaintiff and Class Members should

not face an alleged obligation to pay the unlawful charges assessed for Yardi's and

YES Energy's unlawful conduct. The Pay-to-Pay Fees and Administration Fees

charged to, and paid by, Plaintiff and the Class were imposed to pay Yardi and YES

Energy for their unlawful, unlicensed business in seeking to collect alleged

consumer debts from them, and damaged Plaintiff and the Class.

74.     MCALA's prohibition against persons doing business as a collection

agency without a license is designed to protect the interests of consumer debtors

like Plaintiff and the Class who are subjected to collection activity by collection

agencies and to prohibit collection agencies from using abusive and unfair debt

collection practices against them. In their transactions with Plaintiff and the Class,

Yardi and YES Energy uniformly and systematically failed to comply with, and

violated, the requirements of MCALA, and abused the consumer Plaintiff and Class

Members, who MCALA was enacted to protect.

75.     Moreover, by acting as collection agencies without being licensed to do

so, and causing damages to Plaintiff and the Class as a result, Yardi and YES

Energy each engaged in multiple violations of the MCDCA.

19

76.     In particular, Yardi and YES Energy each claimed, attempted and threatened to enforce the right to act as a collection agency by engaging in collection activity and billing Plaintiff and Class Members, even though they were not licensed as collection agencies, even though they knew they were not licensed as a collection agencies, and even though they knew or acted with reckless disregard to the fact that they had no right to act as collection agencies because unlicensed collection agency activity is prohibited by Maryland law.

77.     Yardi and YES Energy each claimed, attempted, and threatened to enforce the right to assess fees against Plaintiff and Class Members for their actions as unlicensed collection agencies, even though those actions were unlawful, even though Yardi and YES Energy each knew they were not licensed as collection agencies, and even though Yardi and YES Energy had no right to charge Plaintiff and Class members amounts to pay for Yardi and YES Energy's unlawful collection activities.

78.     These wrongful acts by Yardi and YES Energy have hurt Plaintiff and the Class Members. Yardi and YES Energy's actions in violation of Maryland law have enriched them unfairly and illegally, and have unfairly and illegally harmed Plaintiff and the Class.

79.     Yardi and YES Energy acted in concert with and confederated with the landlords of Plaintiff and Class Members in the actions alleged in this Complaint, engaged in a conspiracy with those landlords, and aided and abetted unlawful activity. YES Energy affirmatively and voluntarily undertook to solicit consumer

20

claims from Plaintiff and members of the YES Energy Class, and Yardi undertook to collect payments of consumer claims from Plaintiff and members of the Yardi Class, in an agreement and understanding with the landlords. Yardi, YES Energy, and each such landlord had a common design. In particular, each landlord hired and contracted with YES Energy to solicit members of the YES Energy Class for payment of consumer claims for rent and associated charges, and hired and contracted with Yardi to collect payment of rent and associated charges from Plaintiff and the Yardi Class. However, YES Energy and Yardi had a duty to not seek to collect rent and associated charges from Plaintiff and members of the Classes when they did not have the required license to do so.  YES Energy's and Yardi's unlawful and unlicensed actions caused damages to Plaintiff and Class members, including the charges unlawfully collected from them as a result of YES Energy's and Yardi's unlawful and unlicensed activities.

80.      Unless and until this Court grants the relief Plaintiff seeks through this action, YES Energy and Yardi will retain the proceeds of their unlawful activities, to the detriment of Plaintiff and the members of the Classes.

**B.**        ***Ms. Sullivan's Experience***

> 1. *Ms. Sullivan Paid Administration Fees for YES Energy's Illegal Collection Activity*

81.      YES Energy sent numerous monthly bills to Ms. Sullivan seeking to collect alleged charges and other fees from her, in connection with her residence at a Maryland apartment house.

82.      Each of the bills YES Energy sent to Ms. Sullivan was a form document.

83.      YES Energy repeatedly and monthly billed Ms. Sullivan, and demanded payment by a due date, of an amount due, for numerous consumer claims, including claims for "Base Rent," "Trash Recovery," "Late Fee," "court costs," "Administration Fee," and "Water Charge."

84.      For example, YES Energy sent Ms. Sullivan a bill that indicated it was from YES Energy, for alleged charges arising from her residence, with an alleged "Date Due" of November 1, 2019. This form, computer-generated bill states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $1,502.67, and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists a credit "balance as of close of previous month" of -$2.18. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," plus an additional "Trash Charge" of $3.00, $24.49 for "Late Fee" (despite the credit balance), $29.00 for "court costs," and $5.36 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The bill then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows "Payments" by Ms. Sullivan during the statement period of $1,550.00, and lists a remaining amount due of $1,502.67. The bill includes the "YES Customer Service" "Daily 24 Hour

22

Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

85.      YES Energy sent Ms. Sullivan another bill that indicated it was from YES Energy, for alleged charges arising from her residence, with an alleged "Date Due" of December 1, 2019. This form, computer-generated bill states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $1,473.01, and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists an outstanding "balance as of close of previous month" of $7.67. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," plus an additional "Trash Charge" of $3.00, $14.98 for "Late Fee," $29.00 for "court costs," and $5.36 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The bill then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows "Payments" by Ms. Sullivan during the statement period of $1,580.00, and lists a remaining amount due of $1,473.01. The bill includes the "YES Customer Service" "Daily 24 Hour Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

86.      YES Energy sent Ms. Sullivan another bill that indicated it was from YES Energy, for alleged charges arising from her residence, with an alleged "Date

23

Due" of January 1, 2020. This form, computer-generated bill states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $1,501.47, and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists a credit "Balance as of close of previous month" of -$21.99. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," plus an additional "Trash Charge" of $3.00, $42.93 for "Late Fee" (despite the credit balance), $29.00 for "court costs," and $5.53 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The bill then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows "Payments" by Ms. Sullivan during the statement period of $1,550.00, and lists a remaining amount due of $1,501.47. The bill includes the "YES Customer Service" "Daily 24 Hour Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

87.     YES Energy sent Ms. Sullivan another bill that indicated it was from YES Energy, for alleged charges arising from her residence, with an alleged "Date Due" of February 1, 2020. This form, computer-generated bill states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $1,499.88, and then provides a line to fill in the "Amount

Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists an outstanding "Balance as of close of previous month" of $6.47. Then, it states that it is "Revers[ing]" the "Duplicate" trash charges for September, October, and November. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," $44.92 for "Late Fee", $29.00 for "court costs," and $5.49 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The bill then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows "Payments" by Ms. Sullivan during the statement period of $1,570.00, and lists a remaining amount due of $1,499.88. The bill includes the "YES Customer Service" "Daily 24 Hour Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

88.     YES Energy sent Ms. Sullivan another bill that indicated it was from YES Energy, for alleged charges arising from her residence, with an alleged "Date Due" of March 1, 2020. This form, computer-generated bill states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $1,499.90, and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists an outstanding "Balance as of close of previous month" of $4.88. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," $52.34 for "Late Fee", $29.00 for "court costs," and $5.68 for "Water Charge." It also demands

payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The bill then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows "Payments" by Ms. Sullivan during the statement period of $1,585.02, and lists a remaining amount due of $1,499.90. The bill includes the "YES Customer Service" "Daily 24 Hour Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

89.    YES Energy sent Ms. Sullivan another bill that indicated it was from YES Energy, for alleged charges arising from her residence, with an alleged "Date Due" of April 1, 2020. This form, computer-generated bill states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $2,582.34, and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists an outstanding "Balance as of close of previous month" of $4.90. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," $49.85 for "Late Fee", $29.00 for "court costs," and $5.59 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The bill then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows "Payments" by Ms. Sullivan during the statement period of $500.00, and lists a remaining amount due of $2,582.34. The bill includes the "YES Customer Service" "Daily 24 Hour Service"

phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

90.     YES Energy sent Ms. Sullivan another bill that indicated it was from YES Energy, for alleged charges arising from her residence, with an alleged "Date Due" of May 1, 2020. This form, computer-generated bill states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $2,009.59, and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists an outstanding "Balance as of close of previous month" of $87.34. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," $23.97 for "Late Fee", and $5.28 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The bill then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows "Payments" by Ms. Sullivan during the statement period of $1,100.00, and lists a remaining amount due of $2,009.59. The bill includes the "YES Customer Service" "Daily 24 Hour Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

91.     YES Energy sent Ms. Sullivan another bill that indicated it was from YES Energy, for alleged charges arising from her residence, with a "Statement Date" of April 23, 2020, and a "Date Due" of May 1, 2020. This form, computer-

generated collection statement states, next to the YES Energy Management name,
logo, and address at the top of the bill, as follows: "*Please detach and return this
stub with your payment*". That "stub" lists an alleged "Amount Due" of $2,009.59,
and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to
it. Below the stub, under "Account Detail," it lists an outstanding "Balance as of
close of previous month" of $87.34. Then, it demands payment of $1,492 for "Base
Rent," $3.00 for "Trash Recovery," $23.97 for "Late Fee", and $5.28 for "Water
Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES
Energy's illegal collection agency activity. The bill then demands additional "Lease
Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows
"Payments" by Ms. Sullivan during the statement period of $1,100.00, and lists a
remaining amount due of $2,009.59. The bill includes the "YES Customer Service"
"Daily 24 Hour Service" phone number and E-mail address, and lists "YES System
Information" of a "Property ID" and a "Resident ID/Registration Code."

92.     YES Energy sent Ms. Sullivan another bill that indicated it was from
YES Energy, for alleged charges arising from her residence, with a "Statement
Date" of May 22, 2020, and a "Date Due" of June 1, 2020. This form, computer-
generated collection statement states, next to the YES Energy Management name,
logo, and address at the top of the bill, as follows: "*Please detach and return this
stub with your payment*". That "stub" lists an alleged "Amount Due" of $2,031.56,
and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to
it. Below the stub, under "Account Detail," it lists an outstanding "Balance as of

close of previous month" of $514.59. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," $25.01 for "Late Fee", and $5.27 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The bill then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows "Payments" by Ms. Sullivan during the statement period of $1,506.31, and lists a remaining amount due of $2,031.56. The bill includes the "YES Customer Service" "Daily 24 Hour Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

93.    YES Energy sent Ms. Sullivan another bill that indicated it was from YES Energy, for alleged charges arising from her residence, with a "Statement Date" of June 22, 2020, and a "Date Due" of July 1, 2020. This form, computer-generated collection statement states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $2,376.26, and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists an outstanding "Balance as of close of previous month" of $536.56. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," $41.43 for "Late Fee", and $5.27 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The bill then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The bill shows

"Payments" by Ms. Sullivan during the statement period of $1,200.00, and lists a remaining amount due of $2,376.26. The bill includes the "YES Customer Service" "Daily 24 Hour Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

94.      YES Energy sent Ms. Sullivan another collection statement, demanding payment of consumer claims, that indicated it was from YES Energy, for alleged charges arising from her residence, with a "Statement Date" of July 23, 2020, and a "Date Due" of August 1, 2020. This form, computer-generated collection statement states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $1,848.30, and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists an outstanding "Balance as of close of previous month" of $381.26. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," $18.66 for "Late Fee", and $5.38 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The collection statement then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The collection statement shows "Payments" by Ms. Sullivan during the statement period of $1,500.00, and lists a remaining amount due of $1,848.30. The collection statement includes the "YES Customer Service" "Daily 24 Hour Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID"

30

and a "Resident ID/Registration Code."

95.    YES Energy sent Ms. Sullivan another collection statement, demanding payment of consumer claims, that indicated it was from YES Energy, for alleged charges arising from her residence, with a "Statement Date" of August 21, 2020, and a "Date Due" of September 1, 2020. This form, computer-generated collection statement states, next to the YES Energy Management name, logo, and address at the top of the bill, as follows: "*Please detach and return this stub with your payment*". That "stub" lists an alleged "Amount Due" of $2,843.01, and then provides a line to fill in the "Amount Enclosed" with a "$____.___" next to it. Below the stub, under "Account Detail," it lists an outstanding "Balance as of close of previous month" of $353.30. Then, it demands payment of $1,492 for "Base Rent," $3.00 for "Trash Recovery," $62.27 for "Late Fee", $29.00 for "court costs," and $5.44 for "Water Charge." It also demands payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity. The collection statement then demands additional "Lease Charges" of $1,492 for "Base Rent" and $3.00 for "Trash Recovery." The collection statement shows "Payments" by Ms. Sullivan during the statement period of $600.00, and lists a remaining amount due of $2,843.01. The collection statement includes the "YES Customer Service" "Daily 24 Hour Service" phone number and E-mail address, and lists "YES System Information" of a "Property ID" and a "Resident ID/Registration Code."

96.    YES Energy subsequently sent Ms. Sullivan numerous, materially identical monthly collection statements, demanding payment of consumer claims,

that indicated they were from YES Energy, for alleged charges arising from her residence, each of which demanded payment of amounts including not only rent and associated payments allegedly due to Ms. Sullivan's landlord, but also demanding payment of a $3.00 "Administration Fee," to pay for YES Energy's illegal collection agency activity.

>    ### 2. Ms. Sullivan Paid Pay-to-Pay Fees for Yardi's Illegal Collection Activity

97.    YES Energy directed Ms. Sullivan to web pages operated by Yardi to make payments. For example, YES Energy bills directed Ms. Sullivan to the website www.cascadesoverlookapts.com, and that website, in turn, has a "resident login" tab for tenants to make payments due under their lease.

98.    The "resident login" tab leads to a Resident Portal webpage operated by Yardi – https://davidsbrown.securecafe.com/residentservices/cascades-overlook-apts/userlogin.aspx.

99.    YES Energy bills also directed Plaintiff and Class Members to the website www.yesenergymgmt.com. Like the "resident login" tab on the website www.cascadesoverlookapts.com, the "login" tab on the www.yesenergymgmt.com website directs to another Resident Portal webpage on the "securecafe.com" website, which is, again, operated by Yardi.

100.    Each time that Plaintiff made payments of her rent and associated charges for her residence to Yardi, Yardi imposed, and Plaintiff paid, an additional Pay-to-Pay fee to Yardi.

101.     For example, on August 12, 2021, Plaintiff made a payment of rent and associated charges to Yardi by ACH. Yardi sent her an E-mail receipt – misleadingly stating that it was from "Cascades Overlook Apartments," but with the E-mail address no-reply@rentcafe.com. The E-mail was not from "Cascades Overlook Apartments" – it was from Yardi, which owns the rentcafe.com domain. The E-mail reflected that Ms. Sullivan paid a particular "Payment Amount," and, in addition, that she paid a "Service Fee" of $0.95. The E-mail receipt stated "*The service fee is collected by the Payment Agent, not the property management company, and will not display on your ledger. Service fee is non-refundable.*" Yardi is the "Payment Agent" referred to in the E-mail; the receipt stated that "Yardi… acts as the limited payment collection agent of" Ms. Sullivan's landlord.

102.     On September 1, 2021, Plaintiff made a payment of rent and associated charges to Yardi by ACH. Yardi sent her an E-mail receipt – misleadingly stating that it was from "Cascades Overlook Apartments," but with the E-mail address no-reply@rentcafe.com. The E-mail was not from "Cascades Overlook Apartments" – it was from Yardi, which owns the rentcafe.com domain. The E-mail stated that Ms. Sullivan paid a particular "Payment Amount," and, in addition, that she paid a "Service Fee" of $0.95. The E-mail receipt stated "*The service fee is collected by the Payment Agent, not the property management company, and will not display on your ledger. Service fee is non-refundable.*" Yardi is the "Payment Agent" referred to in the E-mail; the receipt stated that "Yardi… acts as the limited payment collection agent of" Ms. Sullivan's landlord.

103.    On September 4, 2021, Plaintiff made a payment of rent and associated charges to Yardi by ACH. Yardi sent her an E-mail receipt – misleadingly stating that it was from "Cascades Overlook Apartments," but with the E-mail address no-reply@rentcafe.com. The E-mail was not from "Cascades Overlook Apartments" – it was from Yardi, which owns the rentcafe.com domain. The E-mail stated that Ms. Sullivan paid a particular "Payment Amount," and, in addition, that she paid a "Service Fee" of $0.95. The E-mail receipt stated "*The service fee is collected by the Payment Agent, not the property management company, and will not display on your ledger. Service fee is non-refundable.*" Yardi is the "Payment Agent" referred to in the E-mail; the receipt stated that "Yardi… acts as the limited payment collection agent of" Ms. Sullivan's landlord.

104.    On October 5, 2021, Plaintiff made a payment of rent and associated charges to Yardi by ACH. Yardi sent her an E-mail receipt – misleadingly stating that it was from "Cascades Overlook Apartments," but with the E-mail address no-reply@rentcafe.com. The E-mail was not from "Cascades Overlook Apartments" – it was from Yardi, which owns the rentcafe.com domain. The E-mail stated that Ms. Sullivan paid a particular "Payment Amount," and, in addition, that she paid a "Service Fee" of $0.95. The E-mail receipt stated "*The service fee is collected by the Payment Agent, not the property management company, and will not display on your ledger. Service fee is non-refundable.*" Yardi is the "Payment Agent" referred to in the E-mail; the receipt stated that "Yardi… acts as the limited payment collection agent of" Ms. Sullivan's landlord.

105.    On December 3, 2021, Plaintiff made a payment of rent and associated charges to Yardi by ACH. Yardi sent her an E-mail receipt – misleadingly stating that it was from "Cascades Overlook Apartments," but with the E-mail address no-reply@rentcafe.com. The E-mail was not from "Cascades Overlook Apartments" – it was from Yardi, which owns the rentcafe.com domain. The E-mail stated that Ms. Sullivan paid a particular "Payment Amount," and, in addition, that she paid a "Service Fee" of $0.95. The E-mail receipt stated *The service fee is collected by the Payment Agent, not the property management company, and will not display on your ledger. Service fee is non-refundable.*" Yardi is the "Payment Agent" referred to in the E-mail; the receipt stated that "Yardi… acts as the limited payment collection agent of" Ms. Sullivan's landlord.

106.    Also on December 3, 2021, Plaintiff made another payment of rent and associated charges to Yardi by ACH. Yardi sent her an E-mail receipt – misleadingly stating that it was from "Cascades Overlook Apartments," but with the E-mail address no-reply@rentcafe.com. The E-mail was not from "Cascades Overlook Apartments" – it was from Yardi, which owns the rentcafe.com domain. The E-mail stated that Ms. Sullivan paid a particular "Payment Amount," and, in addition, that she paid a "Service Fee" of $0.95. The E-mail receipt stated "*The service fee is collected by the Payment Agent, not the property management company, and will not display on your ledger. Service fee is non-refundable.*" Yardi is the "Payment Agent" referred to in the E-mail; the receipt stated that "Yardi… acts as the limited payment collection agent of" Ms. Sullivan's landlord.

**C.**      ***Numerous Class Members Each Shared Ms. Sullivan's Experience.***

   *1. Each YES Energy Class Member Paid Administration Fees for YES Energy's Illegal Collection Activity*

107.    YES Energy sent form collection statements, similar to those sent to Ms. Sullivan, to all of the numerous YES Energy Class Members, and demanded that each YES Energy Class Member pay an "Administration Fee" to pay for YES Energy's illegal collection agency activity.

108.    YES Energy's bills to Plaintiff and YES Energy Class Members demanded payment of these charges by a "due" date.

109.    YES Energy's form bills to Plaintiff and YES Energy Class Members told Plaintiff and Class Members to "please detach and return" the "stub" of the bill "with your payment." These "stubs" prominently include the YES Energy Management name, logo, address, and "YES Customer Service" number.

110.    YES Energy collected or solicited consumer claims from Plaintiffs and other members of the YES Energy Class, for charges purportedly owed to third party landlords. For example, YES Energy, on a monthly basis, solicited from Plaintiff and other YES Energy Class Members charges for consumer claims like Base Rent, Trash Recovery, Late Fee, Court Costs, and Water Charge. In addition to those charges, YES Energy solicited from Plaintiff and other Class Members additional Administration Fees which were imposed to pay for YES Energy's unlawful collection activity.

111.    YES Energy has a business practice of sending dunning

36

communications to consumer debtors soliciting consumer claims from them. For example, in its normal course of business, YES Energy sent monthly communications to Plaintiff and other YES Energy Class Members demanding payment of charges for consumer claims like Base Rent, Trash Recovery, Late Fee, Court Costs, and Water Charge, and additional fees which were imposed to pay for YES Energy's unlawful collection activity.

112.    YES Energy solicits these consumer claims on behalf of third parties. YES Energy's monthly demands for payment were made on behalf of the landlords of Plaintiff and YES Energy Class Members.

113.    YES Energy used, for collection of consumer claims from Plaintiff and Class Members, a series or system of forms or letters that indicated, directly or indirectly, that a person other than the owner was asserting the consumer claims. For example, YES Energy's monthly bills asserted consumer claims against Plaintiff, demanding payment of charges for consumer claims like Base Rent, Trash Recovery, Late Fee, Court Costs, and Water Charge, and additional fees which were imposed to pay for YES Energy's unlawful collection activity. These monthly bills to Plaintiff and other Class Members bore the "YES Energy" logo and address prominently and included a "Due Date" and "Amount Due," and included a "YES Customer Service" telephone number and E-mail address.

114.    YES Energy employed the services of an individual or business to solicit or sell a collection system to be used for collection of consumer claims from Plaintiff and other Class Members. For example, YES Energy used the services of

37

its individual employees to sell, to the landlords of Plaintiff and other Class Members, YES Energy's collection system, including the monthly bills it sent to Plaintiff and other Class Members, to be used for collection of charges for consumer claims like Base Rent, Trash Recovery, Late Fee, Court Costs, and Water Charge, and additional "Administration Fees" which were imposed to pay for YES Energy's unlawful collection activity.

115.    YES Energy charged Plaintiff and each YES Energy Class Member an "Administration Fee."

116.    This fee was charged to Plaintiff and Class Members to pay YES Energy for its collection agency activity directed at Plaintiff and the YES Energy Class, activity which was illegal and which was perpetrated illegally by YES Energy; illegal services for which no payment legally could be charged or collected.

117.    Plaintiff and YES Energy Class Members were damaged by the Administration Fees imposed in the YES Energy bills and paid by Plaintiff and the YES Energy Class Members.

118.    YES Energy misled Plaintiff and YES Energy Class Members into paying the Administration Fees, even though the supposed service for which the fees were charged is illegal, and the fees are uncollectible and should not be assessed against, or collected from, Plaintiff and the YES Energy Class Members.

2.    *Each Yardi Class Member Paid Pay-to-Pay Fees for Yardi's Illegal Collection Activity.*

119.    Yardi collects rent from Plaintiff and Yardi Class Members through

numerous Resident Portals, smartphone apps, and other means.

120.    Plaintiff and each Yardi Class Member made one or more payments of rent and associated charges, which were due or allegedly due under residential leases, to Yardi. Yardi collected the Yardi Class Members' payments on behalf of the Yardi Class Members' landlords, and retained any Pay-to-Pay Fees it charged.

121.    Yardi charged and collected one or more Pay-to-Pay Fees from Plaintiff and each Yardi Class Member. The Pay-to-Pay Fees were not expressly authorized under the lease agreements of Plaintiff or any Yardi Class Members.

122.    The Pay-to-Pay Fees imposed by Yardi were charged to Plaintiff and Yardi Class Members to pay Yardi for its collection agency activity directed at Plaintiff and the Yardi Class, activity which was illegal and which was perpetrated illegally by Yardi; illegal services for which no payment could legally be charged or collected.

123.    Plaintiff and Yardi Class Members were damaged by the Pay-to-Pay Fees imposed by Yardi.

124.    Yardi misled Plaintiff and Yardi Class Members into paying the Pay-to-Pay fees, even though the fees are illegal, and even though the supposed service for which the fee was charged is illegal, uncollectible, and should not be assessed against, or collected from, Plaintiff and Yardi Class Members.

## Class Action Allegations

125.    The Classes, as defined above, are identifiable.  The proposed Class Representative, Ms. Sullivan, is a member of each Class.

126.     Each Class is so numerous that joinder of all members is impracticable. Each proposed Class consists of more than 40 persons.

127.     There are questions of law and fact which are not only common to each Class, but which predominate over any questions affecting only individual Class members.

128.     The common and predominating questions for the YES Energy Class include, but are not limited to:

(a) Whether YES Energy acted as a collection agency in its dealings with Ms. Sullivan and members of the YES Energy Class;

(b) Whether YES Energy had the license necessary to act as a collection agency at the time it billed Ms. Sullivan and the members of the YES Energy Class;

(c) Whether YES Energy must restore amounts paid by Ms. Sullivan and members of the YES Energy Class resulting from YES Energy's allegedly unlawful billing practices, including service or Administration Fees;

(d) Whether YES Energy's actions in its dealings with the YES Energy Class violated the MCALA;

(e) Whether Plaintiff and YES Energy Class members are entitled to a declaratory judgment that YES Energy must be licensed as a collection agency under MCALA in connection with its collection activities directed at Maryland tenants;

(f) Whether YES Energy's actions in its dealings with the YES Energy Class violated the MCDCA;

(g) Whether YES Energy's actions in its dealings with the YES Energy Class violated the MCPA;

(h) Whether YES Energy's actions in its dealings with the YES Energy Class entitle Plaintiff and the Class to restitution.

129.    The common and predominating questions for the Yardi Class include, but are not limited to:

(a) Whether Yardi acted as a collection agency in its dealings with Ms. Sullivan and Yardi Class members;

(b) Whether Yardi had the license necessary to act as a collection agency at the time it collected money from Ms. Sullivan and Yardi Class Members;

(c) Whether Yardi must restore amounts paid by Ms. Sullivan and members of the Yardi Class resulting from Yardi's allegedly unlawful collection practices, including amounts paid for Pay-to-Pay fees;

(d) Whether Yardi's actions in its dealings with the Yardi Class violated the MCALA;

(e) Whether Plaintiff and Yardi Class Members are entitled to a declaratory judgment that Yardi must be licensed as a collection agency under MCALA in connection with its collection activities directed at Maryland tenants;

(f) Whether Yardi's actions in its dealings with the Yardi Class violated the MCDCA;

41

(g) Whether Yardi's actions in its dealings with the Yardi Class violated the MCPA;

(h) Whether Yardi's actions in its dealings with the Yardi Class entitle Plaintiff and the Class to restitution.

130.    The claims of the Plaintiff are typical of the claims of the respective members of each Class within the meaning of Md. Rule 2-231(b)(3) and are based on and arise out of similar facts constituting the wrongful conduct of YES Energy and Yardi.

131.    Plaintiff will fairly and adequately protect the interests of the Classes within the meaning of Md. Rule 2-231(b)(4). Plaintiff is committed to vigorously litigating this matter.  Further, Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.

132.    Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this action.

133.    The prosecution of separate actions by individual members of the Classes would create a risk of establishing incompatible standards of conduct for YES Energy and Yardi within the meaning of Md. Rule 2-231(c)(1)(A).

134.    YES Energy's and Yardi's actions are generally applicable to the Classes as a whole, and Plaintiff seeks declaratory relief with respect to the Classes as a whole within the meaning of Md. Rule 2-231(c)(2).

135.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action

is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(c)(3).

136.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and due to the relatively small amounts of individual damages for Class Members.

137.    Plaintiff's counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

<u>**Causes of Action**</u>

**Count One**

**Declaratory Relief under Md. Cts. & Jud. Pro. § 3-406**

138.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

139.    This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations regarding Plaintiff and members of the Class and Defendants, and under MCALA.

140.    Defendants take the position that they were entitled to undertake the actions alleged herein in their dealings with Plaintiff and members of the Classes even though neither of them were licensed as a collection agency under MCALA.

141.    Plaintiff takes the position that YES Energy and Yardi were each

43

required to be licensed as a collection agency under MCALA at the time they engaged in the activity alleged in this Complaint.

142.    Plaintiff and YES Energy Class Members have received collection notices from YES Energy demanding payment of the amounts alleged in this Complaint, including amounts charged for alleged rent and utility charges, as well as amounts charged as Administration Fees for YES Energy's actions as a collection agency.  Plaintiff and Yardi Class Members face an ongoing alleged obligation to pay Yardi Pay-to-Pay Fees for its collection of payments of rent and associated charges.

143.    This presents an actual, judicable controversy between the parties relating to the actions by YES Energy and Yardi in their dealings with Plaintiff and members of the Classes, relating to the application of MCALA to those actions, and relating to the legitimacy of charges assessed as a result of those actions. In particular, YES Energy and Yardi have each acted as a collection agency with respect to Class Members. YES Energy's actions as a collection agency include assessing and billing charges to Class Members for alleged rent and utilities, as well as Administration Fees, when YES Energy was not entitled to assess or those charges, or to be paid Administration Fees for its actions as a collection agency, because it did not have the license required to act as a collection agency under MCALA. Yardi's actions as a collection agency include collecting payments for rent and associated charges from Plaintiff and Yardi Class Members, as well as Administration Fees and Pay-to-Pay Fees, when Yardi was not entitled to collect

those charges, or to be paid Pay-to-Pay Fees for its actions as a collection agency, because it did not have the license required to act as a collection agency under MCALA.

144.    Plaintiff and Class Members have a right to be free from the charges assessed against them through YES Energy's and Yardi's unlawful actions, and to be free from the consequences of YES Energy's and Yardi's unlawful activities as collection agencies when neither had a collection agency license.

145.    A declaration of the rights of the parties is necessary to resolve the parties' respective rights under the MCALA and the MCDCA. For example, Plaintiff and the Classes are entitled to a declaration that YES Energy and Yardi are collection agencies, which must be licensed under MCALA, and which may not charge fees for unlicensed collection agency activity to, or retain such fees from, Plaintiff and members of the Classes.

**Count Two**

**Violation of the Maryland Consumer Debt Collection Act**

146.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

147.    YES Energy and Yardi, at all times relevant to the actions alleged herein, are each a "collector" within the meaning of section 14-201(b) of the MCDCA, because the alleged debts of Plaintiff and members of the Classes which YES Energy and Yardi collected or sought to collect from them through the actions described herein arose from consumer transactions – i.e. the lease of residential real

45

property.

148.    In collecting and attempting to collect on the alleged debts of Plaintiff and members of the Classes, YES Energy and Yardi violated section 14-202 of the MCDCA.

149.    Among other things, YES Energy and Yardi each violated section 14-202(8) and (11) of the MCDCA when each claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist. Yardi and YES Energy each claimed, attempted and threatened to enforce a right to act as a collection agency and collect a fee for doing so in their dealings with Plaintiff and members of the Classes, when neither had a right to act as a collection agency, because neither were licensed as a collection agency. Yardi and YES Energy each knew that they were not licensed as a collection agency in Maryland. Yardi and YES Energy each knew that they had no right to act as an unlicensed collection agency in their dealings with Plaintiff and members of the Classes. Yardi and YES Energy each knew that they were acting as an unlicensed collection agency in their dealings with Plaintiff and the Class.

150.    In addition, Yardi and YES Energy each violated the MCDCA § 14-202(10) when they engaged in unlicensed debt collection activity directed at Plaintiff and each member of the Classes in violation of the MCALA, as described in this Complaint.

151.    Furthermore, Yardi violated the MCDCA § 14-202(11) when it charged and collected from Plaintiff and each Yardi Class Member one or more Pay-to-Pay

Fees which were not expressly authorized by the agreement creating the debt or permitted by law.

152.     Yardi's and YES Energy's actions in violation of the MCDCA proximately caused damages to Plaintiff and members of the Class. As a direct and proximate result of Yardi's and YES Energy's methods of collecting consumer debts in violation of Maryland law, and without a collection agency license, Plaintiff and other members of the Classes were assessed and paid charges which they did not legally owe, including Administration Fees to compensate YES Energy for its illegal activity and Pay-to-Pay Fees to compensate Yardi for its illegal activity, which damaged Plaintiff and Class Members.

153.     Plaintiff and Class Members also were damaged because they suffered emotional distress and mental anguish resulting from Yardi's and YES Energy's illegal actions in violation of the MCDCA.

**Count Three**

**Violation of the Maryland Consumer Protection Act**

154.     Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

155.     The MCPA generally prohibits unfair or deceptive trade practices in, among other things, the collection of consumer debts. *See* MCPA § 13-303(5).

156.     The actions of Yardi and YES Energy alleged herein constituted unfair or deceptive trade practices in the collection of consumer debts as defined by the MCPA, and in taking those actions Yardi and YES Energy violated the MCPA.

47

157.     For example, Yardi and YES Energy's practices of engaging in the collection activity described in this Complaint, and seeking to collect consumer debt from Plaintiff and Class Members, when Yardi and YES Energy were not licensed or permitted to do so, constituted the failure to state a material fact where the failure deceives or tends to deceive. YES Energy's practice of assessing service charges attributed to YES Energy's illegal collection activity against the accounts of Plaintiff and Class Members, and in bills sent to Class Members demanding payment, without advising that YES Energy was not licensed as a collection agency, constituted the failure to state a material fact where the failure deceives or tends to deceive. Yardi's practice of assessing Pay-to-Pay fees attributed to Yardi's illegal collection activity against Plaintiff and Class Members, fees which were not expressly authorized by the agreement creating the debt or permitted by law, without advising that Yardi was not licensed as a collection agency, constituted the failure to state material facts where the failure deceives or tends to deceive.

158.     Moreover, the unfair or deceptive trade practices barred by the MCPA specifically include the violation of the MCDCA. *See* MCPA § 13-301(14)(iii). YES Energy and Yardi each violated the MCDCA as alleged herein, thus also violating the MCPA.

159.     Plaintiff and Class Members sustained actual damages as a result of the actions in violation of the MCPA and MCDCA alleged herein. Plaintiff and Class Members were damaged by, among other things, the Administration Fees assessed and paid for YES Energy's illegal collection agency activity in violation of

the MCDCA, and the Pay-to-Pay Fees assessed and paid for Yardi's illegal collection agency activity in violation of the MCDCA.

## Count Four

## Money Had and Received

160.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

161.    YES Energy and Yardi each acted as a collection agency in their dealings with Plaintiff and members of the Classes, when each lacked the license required to act as a collection agency, and yet charged Plaintiff and the members of the Classes for that activity.

162.    In addition, Yardi charged Plaintiff and each member of the Yardi Class one or more Pay-to-Pay Fees, which are illegal under the MCDCA.

163.    These actions of Yardi and YES Energy were and are illegal.

164.    Any otherwise existing basis under which Yardi or YES Energy would be entitled to any form of payment or compensation of any kind for acting as a collection agency, when neither YES Energy nor Yardi had a license to act as a collection agency, is nugatory and ineffective as Yardi's and YES Energy's collection agency activities in Maryland were in violation of Maryland law.

165.    As a result of YES Energy's actions, YES Energy collected money, resulting from the charges which it unlawfully assessed to Plaintiff and Class Members, to which it had no legal or equitable right.

166.    YES Energy, for example, collected and retained money which was

49

paid by Plaintiff and Class Members for the charge denominated as for service fees in the bills YES Energy sent to them.

167.    As a result of the actions alleged above, YES Energy obtained possession of money which, in equity and good conscience, it ought not to be allowed to retain and should return to Plaintiff and other Class Members.

168.    As a result of Yardi's actions, Yardi collected money, resulting from the charges which it unlawfully assessed to Plaintiff and Class Members, to which it had no legal or equitable right.

169.    Yardi, for example, collected and retained Pay-to-Pay Fees which were illegal, and which were paid for Yardi's unlicensed and unlawful actions as a collection agency.

170.    As a result of the actions alleged above, Yardi obtained possession of money which, in equity and good conscience, it ought not to be allowed to retain and should return to Plaintiff and other Yardi Class Members.

### Count Five
### Negligence

171.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

172.    Yardi and YES Energy each had a duty to Plaintiff and members of the Classes to not send them bills and act as a collection agency, when each did not have the license to act as a collection agency required under Maryland law.

173.    In addition, Yardi had a duty to not charge Pay-to-Pay Fees which are

illegal under Maryland law because they are not expressly authorized by the agreement creating the debt or permitted by law.

174.    YES Energy and Yardi breached their duties of care to Plaintiff and members of the Classes when they acted as collection agencies in their dealings with Class Members when they did not have the license to do so. Yardi further breached its duties of care to Plaintiff and members of the Yardi Class when it charged Pay-to-Pay Fees which are illegal.

175.    Plaintiff and members of the Class have suffered actual losses and damages as the proximate result of the breaches of duty of Yardi and YES Energy. Among other things, Plaintiff and members of the Classes have been assessed and forced to pay amounts for Administration Fees to pay YES Energy for its unlawful actions as a collection agency, and illegal Pay-to-Pay Fees to pay Yardi for its unlawful actions as a collection agency. These damages, losses and injuries were proximately caused by the breaches of duty of YES Energy and Yardi, as Plaintiff and Class Members would not have paid service fees for YES Energy's unlicensed and unauthorized actions absent YES Energy's breaches of duty, and would not have paid illegal Pay-to-Pay Fees for Yardi's unlicensed and unauthorized actions absent Yardi's breaches of duty.

## Count Six

## Unjust Enrichment

176.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

177.    Plaintiff and members of the YES Energy Class conferred a benefit upon YES Energy by paying amounts billed to them in the bills sent by YES Energy, amounts from which YES Energy took a portion of the payment.

178.    YES Energy knew of the benefit conferred upon it by Plaintiff and the members of the YES Energy Class. YES Energy affirmatively demanded in its bills that Plaintiff and members of the YES Energy Class pay amounts including, among other things, Administration Fees for YES Energy.

179.    It would be inequitable for YES Energy to retain the amounts that it has received in connection with the collection activity directed to Plaintiff and YES Energy Class Members, as those amounts were paid to YES Energy as a result of its unlawful activity described in this Complaint, and were not legally owed to YES Energy and could not legally be collected by YES Energy.

180.    Plaintiff and members of the Yardi Class conferred a benefit upon Yardi by paying Yardi's Pay-to-Pay Fees.

181.    Yardi knew of the benefit conferred upon it by Plaintiff and the members of the Yardi Class. Yardi affirmatively demanded that Plaintiff and members of the Yardi Class pay the Pay-to-Pay Fees.

182.    It would be inequitable for Yardi to retain the Pay-to-Pay Fee amounts that it has received from Plaintiff and Yardi Class Members, as those amounts were paid to Yardi as a result of its unlawful activity described in this Complaint, and were not legally owed to Yardi and could not legally be collected by Yardi.

WHEREFORE, Plaintiff respectfully requests:

52

A.      a declaratory judgment under Md. Cts. & Jud. Pro. § 3-406, declaring the rights of the parties, including a declaration that YES Energy and Yardi are each legally required to be licensed as a collection agency under Md. Code Ann., Bus. Reg. §§ 7-101, *et seq.* when undertaking the activities alleged in this Complaint, and that YES Energy and Yardi may not collect or retain fees from Plaintiff or Class Members for collection agency activity undertaken without a collection agency license;

B.      recovery of compensatory damages in an amount determined by a jury, including all amounts paid by Plaintiff and YES Energy Class Members for Administration Fees in connection with the bills sent by YES Energy to Plaintiff and YES Energy Class Members, all amounts paid by Plaintiff and Yardi Class Members for Pay-to-Pay Fees, damages for emotional distress and mental anguish, disgorgement and restitution of all benefits received by YES Energy and Yardi in connection with their unlicensed collection agency activity alleged in this Complaint, reasonable attorney's fees pursuant to Md. Code Ann., Com. Law § 13-408(b), and the costs of this action, all in an aggregated sum in excess of $75,000.00 for the proposed Class as a whole; and,

C.      such other and further relief as the nature of this case may require.

Respectfully submitted,

53



_____
Benjamin H. Carney (Att'y No. 0412140132)
bcarney@GWCfirm.com
Richard S. Gordon (Att'y No. 8912180227)
rgordon@GWCfirm.com
Sara E. Assaid (Att'y No. 2001220006)
sassaid@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., Suite 100
Towson, Maryland 21204
Telephone: (410) 825-2300
Facsimile: (410) 825-0066

**Attorneys for Plaintiff and the Class**

## **<u>JURY TRIAL</u>**

Plaintiff demands a trial by jury on all issues triable of right by a jury.

_____
Benjamin H. Carney

## CERTIFICATE OF SERVICE

I hereby certify, this 24th day of January, 2022, that service of the foregoing

was made electronically by the MDEC system on all persons entitled to service.

_____

Benjamin H. Carney (Att'y No. 0412140132)