**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **MONICA SULLIVAN, individually, and on** | | |
| **behalf of all others similarly situated,** | * | |
| | | |
| **Plaintiff,** | * | |
| **v.** | | **Case No.: GJH-22-0418** |
| | * | |
| **YES ENERGY MANAGEMENT, INC., and** | | |
| **YARDI SYSTEMS, INC.,** | * | |
| | | |
| | * | |
| | | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Monica Sullivan, individually, and on behalf of all others similarly situated, brings this putative class action against Defendants Yardi Systems, Inc. ("Yardi") and YES Energy Management, Inc. ("YES Energy") for declaratory relief under the Maryland Declaratory Judgment Act, Md. Code. Ann., Cts. & Jud. Pro. § 3-406 (Count I); violations of the Maryland Consumer Debt Collection Act (Count II); violations of the Maryland Consumer Protection Act (Count III); money had and received (Count IV); negligence (Count V); and unjust enrichment (Count VI). ECF No. 6.

Pending before the Court are Defendant Yardi's Motion to Dismiss Plaintiff's First Amended Class Action Complaint, ECF No. 8, and Defendant Yes Energy Management's Partial Motion to Dismiss Plaintiff's First Amended Class Action Complaint, ECF No. 9. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Yardi's Motion to Dismiss is granted in part and denied in part, and YES Energy's Motion to Dismiss is denied.

I.      **BACKGROUND**[1]

Yardi and YES Energy are corporations in the residential real estate business. ECF No. 6 ¶ 17. Yardi is a California corporation with its principal place of business in California, and YES Energy is a Colorado corporation with its principal place of business in Colorado. *Id.* ¶¶ 13–14. YES is a wholly owned subsidiary of Yardi. *Id.* ¶ 14. Plaintiff Monica Sullivan is a resident of Maryland. *Id.* ¶ 12.

According to the Amended Complaint, Yardi and YES Energy "specialize" in the collection of residential rent and associated charges for multifamily housing landlords, including landlords in Maryland. *Id.* ¶¶ 17–18. YES Energy bills residential tenants, soliciting the payment of rent and any associated charges, while Yardi collects the payment of rent and any associated charges, including from tenants who have been billed by YES Energy and those that have not. *Id.* ¶ 19.

Yardi contracts with residential landlords to accept payments of rent and associated charges from tenants, on a landlord's behalf, through a Resident Portal or smartphone app. *Id.* ¶ 22–24. Tenants can make payments through the Resident Portal or app via ACH, credit card, and debit card. *Id.* ¶ 21. Plaintiff claims that each time she paid her rent bill through the Resident Portal, she was charged an extra "pay-to-pay" fee, called a "service fee," of $0.95. *Id.* ¶¶ 98, 100–06. For each payment, Plaintiff received an email receipt that stated: "The service fee is collected by the Payment Agent [Yardi], not the property management company, and will not display on your ledger. Service fee is non-refundable." *Id.* ¶¶ 101–106. The receipt also stated that "Yardi … acts as the limited payment collection agent of" Plaintiff's landlord. *Id.* Plaintiff

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

asserts that the "pay-to-pay" fee was not expressly authorized in her lease agreement or permitted by law. *Id.* ¶ 68.

The Amended Complaint further asserts that YES Energy contracts with residential landlords to "solicit" from tenants rent and associated charges arising from residential leases. *Id.* ¶ 39. YES Energy sends bills to tenants assessing charges arising from the leases and "demanding payment" of those charges. *Id.* Plaintiff also argues that YES Energy's bills constitute a series or system of forms or letters that indicated (directly or indirectly) to tenants that YES Energy was asserting consumer claims against Plaintiff. *Id.* ¶ 46. Each bill that Plaintiff received also allegedly included a $3.00 "Administration Fee" to be paid for YES Energy's services. *Id.* ¶¶ 6, 83–96.

On October 4, 2021, Plaintiff commenced a class action against YES Energy in Montgomery County Circuit Court. ECF No. 1 at 1.[2] On January 24, 2022, Plaintiff filed an Amended Complaint adding Yardi as a defendant. *Id.* On February 18, 2022, Defendants removed the action to federal court. *Id.* On February 25, 2022, Defendants submitted their respective Motions to Dismiss. ECF No. 8; ECF No. 9. Plaintiff responded, ECF No. 16, and Defendants replied, ECF No. 17; ECF No. 18.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted).

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true," to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Further, a court must determine "whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Nevertheless, a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *E.I. du Pont de Nemours*, 637 F.3d at 440 (internal quotations and citation omitted).

## III.   DISCUSSION

Plaintiff Monica Sullivan, on behalf of herself and others similarly situated, brings this putative class action against Yardi and YES for collecting extra—purportedly illegal—fees as unlicensed debt collectors, in the course of their business collecting rent from Maryland residential tenants. ECF No. 6 ¶ 2–3. Plaintiff asserts that the companies have together obtained more than $9.5 million such fees in the past three years. ECF No. 16 at 9.

Defendant Yardi moves to dismiss all six of Plaintiff's statutory and common-law claims. *See* ECF No. 8; ECF No. 8-1. Defendant YES Energy moves to dismiss Plaintiff's three common-law claims, asserting that it will defeat the statutory claims "once discovery allows YES to introduce facts about its business model into the record." ECF No. 9-1 at 5.

### A.  Statutory Claims

4

### 1.   Maryland Consumer Protection and Licensing Statutes

The Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law CL § 14-201 et seq., and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101, et seq., were enacted "to protect consumers from unfair or deceptive trade practices, including the collection of consumer debts." *Andrews & Lawrence Pro. Servs., LLC v. Mills*, 467 Md. 126, 132 (2020). The MCDCA "prohibits debt collectors from engaging in an extensive list of practices," while the MCPA "both functions as a 'statutory enforcement umbrella' and contains its own prohibitions." *Alexander v. Carrington Mortg. Servs.*, LLC, 23 F.4th 370, 372 (4th Cir. 2022) (citing *Mills*, 467 Md. at 132).

Additionally, state law provides that entities involved in debt collection must be licensed by the State Collection Licensing Board to do business as a collection agency, pursuant to the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. § 7-101 et seq. Taken together, "[t]he overarching purpose and intent of these remedial consumer protection and licensing statutes is to protect the public from unfair or deceptive trade practices by creditors engaged in debt collection activities." *Mills*, 467 Md. at 132. Further, as a "statutory enforcement umbrella," the MCPA provides that violations of the MCDCA are also per se violations of the MCPA. *See* Md. Code Ann., Com. Law § 13-301(14)(iii).

### 2.   MCDCA and MCALA Claims

In seeking to dismiss the statutory claims against it, Defendant Yardi argues that Plaintiff cannot make a threshold showing that it meets the statutory definitions for debt "collector" or "collection agency" under Maryland law. Yardi argues that Plaintiff's statutory claims fail because Yardi is a third-party software service provider, not a debt collector or collection

agency, and therefore cannot be held liable under Maryland's consumer protection and licensing statutes. ECF No. 8-1 at 12.

### a. Debt Collector

First, Yardi argues that it is not a debt "collector" under the MCDCA. The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Com. Law § 14-201(b). The MCDCA further provides that debt collectors may not violate the provisions incorporated in sections 804 through 812 of the federal FDCPA. *Id.* § 14-202(11).

To start, Yardi does not dispute that it is a "person" under the statute, the definition of which includes "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." *Id.* § 14-201(d). Nor does Yardi dispute that Plaintiff's debt arose out of a consumer transaction.

Yardi does argue, however, that its business practices do not constitute debt collection. ECF No. 8-1 at 13. More specifically, Yardi asserts that the MCDCA does not define what it means to "collect" a debt, and it concludes the term cannot appropriately include a software program that merely processes online payments for tenants. *Id.* at 14. Yardi claims that the company does not solicit tenants to pay rent or demand rent payments once due, and it does not take steps to obtain payment or liquidation of what tenants owe to landlords. *Id.*

Yardi seeks to differentiate its operations from debt collection as it is "commonly understood." *Id.* at 13. Yardi argues that "the term 'collect' must be construed according to its 'ordinary and popular understanding' in the particular statutory 'context in which the word is used.'" *Id.* (quoting *Berry v. Queen*, 233 A.3d 42, 45 (2020)). In the context of the Fair Debt

Collection Practices Act ("FDCPA"), the federal debt collection statute, Yardi argues, the Supreme Court has held that debt collection means "to obtain payment or liquidation of [a debt or claim], either by personal solicitation or legal proceedings." *Id.* at 14 (quoting *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995)). As such, Yardi claims that the act of "collecting" under Maryland law similarly requires active solicitation of tenants to pay their rent, demands of payment once it is due, or any other attempt to "obtain payment or liquidation." *Id.*

Plaintiff responds by asserting that a recent decision by the Court of Appeals for the Fourth Circuit, finding that a mortgage servicer meets the definition of debt collector under Maryland law, supports their position. *See Alexander*, 23 F.4th at 374–75; *see also Parker v. Goldman Sachs Mortg. Co. Ltd. P'ship*, No. GJH-20-3581, 2022 WL 991396, at *6 (D. Md. Mar. 31, 2022) (holding mortgage assignee and collection agency were "collectors" in light of *Alexander*). In *Alexander*, the Fourth Circuit stressed that the MCDCA "must be liberally construed, in order to effectuate [its] broad remedial purpose." *Id.* at 374 (quoting *Mills*, 467 Md. at 162); *see also Chavis v. Blibaum & Assocs., P.A.*, 476 Md. 534, 552 (2021), *reconsideration denied* (Sept. 28, 2021) (noting the MCDCA's "remedial" aim).

Further, the *Alexander* court held that the MCDCA contained a "broader definition" of debt collector that "controls" and "is not displaced by the federal definition" of the term, as provided under the FDCPA. *Id.* at 375. The court found that "the Maryland legislature was intentional on this front: it incorporated only the FDCPA's 'substantive provisions'"—thereby setting aside "the FDCPA's narrower definition of 'debt collector'" in favor of its own, less restrictive one. *Id.* at 375–76 (citing *Chavis*, 476 Md. at 565 n.14). As such, "[t]he end result, as Maryland district courts have recognized, is that 'the MCDCA applies more broadly than the

FDCPA.'" *Id.* at 376 (quoting *Aghazu v. Severn Savings Bank*, 2017 WL 1020828, at *8 n.21 (D. Md. Mar. 16, 2017)).

The *Alexander* court thus held that a mortgage servicer was a collector under the MCDCA because "it is plain that, by collecting borrowers' monthly mortgage payments, Carrington is collecting a debt." *Id.* at 375. As the court explained, the MCDCA "draws no … distinction" between the "passive[ ] accepting [of] monthly payments" and "actively enforcing the payment obligations of defaulting borrowers." *Id.* And while the FDCPA requires debt to be in default, "the MCDCA's definition has no similar limitation." *Id.*

The holding in *Alexander*, which was based on a close reading of the Maryland statute and Maryland case law, is instructive for this Court. In light of the Fourth Circuit's finding that entities involved in the passive collection of all consumer debts, not just those that are past due, are regulated by the MCDCA, the Court finds, at this stage, that Plaintiff raises sufficient facts to plausibly allege that Yardi is a debt collector. *See, e.g.*, ECF No. 6 ¶ 120 (Plaintiff "made one or more payments of rent and associated charges, which were due or allegedly due under residential leases, to Yardi. Yardi collected the Yardi Class Members' payments on behalf of the Yardi Class Members' landlords.").

This decision is bolstered by a May 2022 bulletin published by Maryland's Office of the Commissioner of Financial Regulation in response to the *Alexander* decision. *See Notice to Lenders and Servicers: Court Decision on So-called "convenience Fees" (Fees for Loan Payments Might not be Collectable)*, Md. Comm. Fin. Reg. (May 12, 2022). As the Office explained, "the conclusions reached in the [*Alexander*] decision extend to all lenders and servicers, as well as any other person seeking to collect a consumer debt." *Id.* As the Office further observed, "attempts to circumvent this fee restriction by directing consumers to a

payment platform associated with the lender or servicer that collects a loan payment fee … could also violate Maryland law." *Id.*

At this juncture, the Court further holds that whether Yardi is a "collector" under the MCDCA is a question of fact that would benefit from the discovery process, although it has been sufficiently alleged to survive a motion to dismiss. Yardi argues that it is a not a debt collector, but instead a "software platform" that provides payment processing, ECF No. 8-1 at 16, and that it is "nothing like a mortgage servicer," ECF No. 18 at 9. However, additional information about Yardi's operations is necessary to determine whether it may, in fact, fall outside the broad parameters established by the MCDCA, particularly as it relates to the term "collect."[3]

Because Plaintiff has plausibly alleged Yardi is a debt collector, the Court turns to the substantive restrictions of the MCDCA. As noted previously, the MCDCA provides that debt collectors may not violate certain provisions of the federal FDCPA. Section 808 of the FDCPA states that debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt," including the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). In *Alexander*, the Fourth Circuit confirmed that "convenience fees qualify as an 'amount' under the FDCPA," and thus constitute a violation under the MCDCA, unless expressly authorized by agreement or permitted by law. *Alexander*, 23 F.4th at 376–77.

---

[3] The Court takes notice as well of the Fourth Circuit's closing in *Alexander*: "We do not know if disallowing these fees is a wise policy choice. But it is the choice that Maryland has made, and our role is simply to respect it." 23 F.4th at 380.

Here, Plaintiff has asserted that Yardi charges a service fee in connection with its rent collection services that is not provided for in Plaintiff's lease or permitted by law. *See* ECF No. 6 ¶ 68. Thus, Plaintiffs have plausibly alleged a violation of the MCDCA, pursuant to section 14-202(11).

### b. Collection Agency

Next, Yardi contests that it is not a "collection agency" under Maryland law. As noted previously, the MCALA is a licensing statute that regulates any business operating as a collection agency. For purposes here, the MCALA provides that a collection agency is: "a person who engages directly or indirectly in the business of … collecting for, or soliciting from another, a consumer claim." Md. Code Ann., Bus. Reg. § 7-101(d)(1)(i). A collection agency is also one who "employ[s] the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim." *Id.* § 7-101(d)(4). A "consumer claim" is defined as a claim that "is for money owed or said to be owed by a resident of the State; and arises from a transaction in which, for a family, household, or personal purpose, the resident sought or got credit, money, personal property, real property, or services." *Id.* § 7-101(f). Operating without a license is a violation of MCALA, Md. Code Ann., Bus. Reg. § 7-301, which, in turn, is a per se violation of the MCDCA, Md. Code Ann., Com. Law § 14-202(10).

Yardi argues that it does not engage in debt collection activity or sell a collection system, and that it does not "send[ ] communications to tenants asking or demanding that they pay their rent." ECF No. 8-1 at 15. Yardi alleges its purpose is "not to obtain the payment of a debt," but to supply landlords with a "passive software service" that provides, among other things, the "option" to pay rent online. *Id.* Yardi points to a recent case by the Maryland Court of Appeals that discusses the legislative history of the MCALA. *See Blackstone v. Sharma*, 461 Md. 87, 124

(2018). According to a 1977 finding by the Maryland legislature, when the law was enacted, collection agencies were those entities that provided services "generally performed on a commission or a percentage basis," where debts were collected "over the telephone or by mail." *Id.* Legislators sought to rein in collection tactics such as "harassment, abusive language, and attempting to collect debts not owed," which Yardi argues stand in stark contrast with its own business practices. *Id.*

In response, Plaintiffs assert that rent collectors of all types have long been required to be licensed as collection agencies in the state of Maryland. *See Williams v. eWrit Filings, LLC*, 253 Md. App. 545, 558–59, *cert. denied sub nom. eWrit Filings v. Williams*, 478 Md. 518 (2022). In *Williams*, the court found that a company hired by a property manager to file actions for failure to pay rent constituted a collection agency. The court observed that, aside from a specific exemption for real estate brokers and their agents, "the MCALA implicitly asserts that *all other individuals or entities* that seek to collect rent for others *are* in fact performing debt collecting activity." *Id*. at 558. The *Williams* court based this decision, in part, on its own reading of the law's legislative history, including a 1980 opinion published by the Maryland Attorney General's Office interpreting the law and a subsequent amendment to the law, passed just two weeks later, that provided a single carveout for real estate brokers and their agents. *Id.* at 558–59. Thus, the court determined: "[b]y failing to exempt any other rent collection entities in the bill, the General Assembly inferentially manifested its intent that all other rent collectors engage in debt collection activity." *Id.* at 560.

Here, it would seem, the Court is left without clear precedent, as neither case is directly on point. Where the state's high court has not addressed the specific question at issue, a federal court may "predict how the court would rule," with the "state's intermediate appellate court" as

the "next best indicia" of state law. *Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs.*, Inc., 296 F.3d 308, 312 (4th Cir. 2002).

Both *Blackstone*, decided by Maryland's high court, and *Williams*, decided by Maryland's intermediate court, review MCALA's legislative history and the meaning of the term "collection agency." Still, the language in *Blackstone*, as put forward by Yardi, cannot be considered in a vacuum. As noted by Plaintiff, the *Williams* court explicitly distinguished *Blackstone* in its decision, because *Blackstone* ultimately "involved whether a foreign statutory trust constitutes a debt collection agency in light of a 2007 amendment to the MCALA." *Id.* at 559 n.13. The decision in *Williams* more directly addresses the issue at hand. Thus, to the extent that the *Williams* court focuses its inquiry on the breadth of the statute's definition of collection agency, the Court finds the analysis persuasive, particularly given that the Maryland Court of Appeals declined to hear an appeal of its decision. *See Williams*, 478 Md. 518.

Additionally, this Court also looks to cases where the MCALA has been applied to those providing services that are most like Yardi's—such as property managers collecting certain fees on behalf of homeowner associations. Courts may "consider[ ] the type of activity that the [entity] engaged in to determine whether they required a debt collector's license." *Cilano v. Shea*, No. PWG-19-827, 2020 WL 12744576, at *3 (D. Md. Apr. 2, 2020) (citing *Fontell v. Hassett*, 870 F. Supp. 2d 395, 410 (D. Md. 2012)). For instance, the *Cilano* court held that a property manager was a collection agency under the MCALA for her work on behalf of several condominium associations, despite the fact that the manager asserted that she "did not take collection actions" and that any communications were "not collection notices." *Id.* The court, however, found that plaintiff's allegations "unquestionably" qualified as the collection of consumer claims. There, the allegations included that plaintiff condo owners "paid all

assessments and other charges due to [the condo complex] through [the manager]"; that the manager sought "to collect consumer debts relating to community association dues due to another and also after default" on behalf of the condo complex; that the manager "directly and indirectly support[ed] the filing of lawsuits and liens in connection with its collection activities"; and that the manager sent a "Fine Notice" to one of the plaintiffs "assessing accrued fines, notifying that payment will be due within 10 days after the violation is corrected, and warning that failure to pay will be treated as a delinquency turned over to legal counsel for collection.". *Id.* Here, Plaintiff alleges that she "made a payment of rent and associated charges to Yardi, and in each such transaction Yardi collected the payment of rent and associated charges on behalf of its client—the Yardi Class member's landlord." ECF No. 6 ¶ 25. Then, Yardi "transferred the value of the payment of rent and associated charges" to Plaintiff's landlord. *Id.* Plaintiff also asserts that Yardi describes itself to tenants as a "limited payment collection agent" on behalf of Plaintiff's landlord. *Id.* ¶ 101. Taking these allegations as true, as is required at the dismissal stage, the Court finds that Plaintiff has plausibly alleged that Yardi is a collection agency.

Further, because the MCALA provides that any person doing business as a collection agency in the state must have a license to operate, *see* Md. Code Ann., Bus. Reg. § 7-301(a), Plaintiff has further plausibly alleged a violation of the MCDCA, *see* Md. Code Ann., Com. Law § 14-202(10).

### c. Attempting to Enforce a Right with Knowledge

Yardi next argues that, at minimum, the Court should dismiss Plaintiff's claims under section 14-202(8) of the MCDCA because it has not violated the law and because Plaintiff cannot show that Yardi had knowledge of any violation of the law. ECF No. 8-1 at 18–19. The provision prohibits debt collectors from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a

right with knowledge that the right does not exist." Md. Code, Com. Law § 14-202(8).

Knowledge requires "proof that a debt collector claimed, attempted, or threatened to enforce the

non-existent right with actual knowledge or with reckless disregard as to the falsity of the

existence of the right." *Chavis*, 476 Md. at 563 (internal quotations and citation omitted).[4]

Yardi contends that Plaintiff has asserted no facts to suggest that it had knowledge of any

purported violations of the law. However, courts have determined that the knowledge

requirement under section 14-202(8) "does not immunize debt collectors from liability for

mistakes of law." *Smith v. Oliveri & Assocs., LLC*, No. CV GLR-20-2598, 2022 WL 596805, at

*9 (D. Md. Feb. 28, 2022). Whether a defendant acted recklessly in its mistake of law "is a

question of fact" that will "depend on all the facts the parties enter in evidence." *Chavis*, 476 Md.

at 569. The discovery process provides the opportunity to draw a distinction "between a non-

reckless mistake as to a claimed right on the one hand, and reckless disregard of the nonexistence

of a claimed right on the other." *Id.* Thus, this Court is, for now, faced with "a situation where

the law under the MCDCA was unclear and where Defendants allegedly sought to conduct their

business within the unresolved boundaries of the law." *Smith*, 2022 WL 596805, at *9. What's

more, as courts have provided, "[p]rofessional debt collectors and their attorneys, therefore, must

---

[4] Defendant Yardi additionally raises the issue of what standard should be applied at the pleading stage with respect to section 14-202(8). Yardi argues that Plaintiffs have failed to plead actual knowledge of any statutory violation, ECF No. 8-1 at 18, and that federal courts should look to Rule 9(b)'s heightened pleading standard for fraud or mistake, Fed. R. Civ. P. 9(b).

On this issue, the Court would make two observations. First, this Court has recently held that "in light of the remedial nature of the MCDCA, and until some precedent binding on this Court requires otherwise, 'statutory consumer protection claims, like claims under the MCDCA … are not required to be pled with particularity.'" *Smith v. Oliveri & Assocs.*, LLC, No. CV GLR-20-2598, 2022 WL 596805, at *8 n.6 (D. Md. Feb. 28, 2022) (quoting *Gillis v. Household Fin. Corp. III*, No. GJH-18-3923, 2019 WL 3412621, at *8 (D. Md. July 29, 2019)). Second, this Court has not ruled that Rule 9(b) should reflexively apply in 14-202(8) matters. In a case cited by Yardi, this Court specifically noted that defendant's actions "all sound[ed] in fraud"—as distinct from those cases "based on non-fraudulent but unfair or deceptive conduct [that] are not required to be pled with particularity." *See Watson v. HomeBridge Fin. Servs., Inc.*, No. GJH-20-2578, 2022 WL 125278, at *8 (D. Md. Jan. 13, 2022) (internal quotations and citation omitted).

be held to be aware of laws affecting the validity of their collection efforts." *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1999).

Here, as noted previously, Plaintiff has plausibly alleged that Yardi acted in contravention with the laws of Maryland. In the case of the alleged violations under the MCALA, Plaintiff has asserted that Yardi should have been on notice of its duty to register as a licensed collection agency "for more than forty years." ECF No. 16 at 32. The question of whether Defendant's actions, if proven to be unlawful, constitute a reckless mistake or a non-reckless one, should be borne out in discovery. Thus, while Plaintiff provides relatively thin allegations with regard to Yardi's knowledge, the Court finds these assertions sufficient in light of the considerations described here. As such, the Court will permit the section 14-202(8) claim to proceed.

### 3. MCPA Claims

Finally, Yardi alleges that because Plaintiff's other statutory claims are improperly pled, her claim under the MCPA should fail as well. ECF No. 8-1 at 12. As noted previously, the MCPA operates as a "statutory enforcement umbrella" and provides that any violation of the MCDCA also constitutes a violation of the MCPA. *See* Md. Code Ann., Com. Law § 13-301(14)(iii). Accordingly, because Plaintiff has plausibly alleged violations of the MCDCA, it follows that she has stated a claim under the MCPA as to these allegations.

However, to the extent that Plaintiff asserts a standalone violation of the MCPA for unfair and deceptive trade practices in the collection of consumer debts, the Court will examine the issue separately. *Id.* § 13-303(5); *see* ECF No. 6 ¶¶ 155–157. Because the claim was presented in Plaintiff's Amended Complaint, the Court will address it here, although the issue did not receive much, if any, attention in the parties' subsequent briefings.

To plead a standalone claim under the MCPA, a plaintiff must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Alexander*, 23 F.4th at 380 (internal quotations and citation omitted). Here, Plaintiff has provided merely a "threadbare recital of the elements of a cause of action" rather "than a plausible claim for relief" in her Amended Complaint. *Id.* (quoting *Iqbal*, 556 U.S. at 678, 679) (internal quotations omitted); *see* ECF No. 6 ¶ 157. As such, the Court will dismiss Plaintiff's standalone claim under the MCPA.

## B. Common Law Claims

Defendants Yardi and YES Energy each argue that Plaintiff's common law claims—for negligence, money had and received, and unjust enrichment—should fail because Plaintiff cannot show that Yardi or YES Energy owe Plaintiff a duty of care, because money had and received is not an appropriate tort claim in this case, and because Yardi merely charges a small fee to provide a valuable service to Plaintiff and because YES is paid for its services by its landlord clients, who may pass those fees onto tenants if they choose. ECF No. 8-1 at 19; ECF No. 9-1 at 5–6.

### 1. Negligence

Defendants argue that Plaintiffs have failed to state a claim for negligence because they have not shown that Defendants have a duty of care and because Defendants are protected by the economic loss doctrine. *See* ECF No. 8-1 at 19–22; ECF No. 9-1 at 6–9. Generally, to establish negligence, a plaintiff must show that: (1) the defendant had a duty to protect the plaintiff from injury, (2) defendant breached that duty, (3) the plaintiff suffered actual injury or loss, and (4) the loss or injury proximately resulted from the defendant's breach of duty. *Rosenblatt v. Exxon Co.*, 642 A.2d 180 (1994) (citation omitted).

In this action, Plaintiff alleges negligence arising from Defendants' statutory violations under the MCALA, MCDCA, and MCPA. ECF No. 6 at 52. Maryland does not recognize negligence per se; however, the test for determining negligence is modified when a plaintiff alleges a defendant's duty is established by statute. Under the "statute or ordinance rule," the plaintiff must show: (a) the violation of a statute or ordinance that was designed to protect a specific class of persons which includes the plaintiff, and (b) the violation proximately caused the alleged injury. *Webb v. Green Tree Servicing*, LLC, No. CIV.A. ELH-11-2105, 2012 WL 2065539, at *6 (D. Md. June 7, 2012) (internal quotations and citation omitted). In doing so, the plaintiff establishes prima facie evidence of negligence. *See Kiriakos v. Phillips*, 448 Md. 440, 457 (2016). Once a prima facie case is established, the defendant's negligence "becomes a question for the fact finder, which must evaluate whether the actions taken by the defendant were reasonable under all the circumstances." *Elkharroubi v. Six Flags Am., LP*, No. CV TJS-17-2169, 2020 WL 1043304, at *9 (D. Md. Mar. 4, 2020), *aff'd*, No. 20-1387, 2022 WL 152416 (4th Cir. Jan. 18, 2022) (internal quotations and citation omitted).

Defendants argue the statutes at issue were enacted to protect the public at large, not a specific class of people, and therefore cannot support a duty of care. ECF No. 8-1 at 19–21; ECF No. 9-1 at 7–8. They note that the law must "unmistakably focus on a particular class of beneficiaries whose welfare a legislature intended to further." *See* ECF No. 18 at 16 (quoting *Aleti v. Metro. Baltimore*, LLC, 251 Md. App. 482, 505, *cert. granted*, 476 Md. 263 (2021), and *aff'd*, 479 Md. 696 (2022) (cleaned up)).

Plaintiffs point to a recent case in the district court that held that Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, was designed to protect consumers—a specific class of persons—and, thus, violations of the FTC Act in a data breach case were

sufficient to support a tort duty in negligence. ECF No. 16 at 33–34; *see In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, MDL No. 19-MD-2879, 2020 WL 6290670, at \*10 (D. Md. Oct. 27, 2020), *reconsideration denied sub nom. In re Marriott Int'l, Inc.*, MDL No. 19-MD-2879, 2021 WL 1516028 (D. Md. Apr. 16, 2021). The *Marriott* court determined that plaintiffs were "members of the class [*i.e.*, consumers] that Section 5 of the FTC was designed to protect." *In re Marriott*, 2020 WL 6290670, at \*10.

Defendants argue that the *Marriott* court "incorrectly applied Maryland law" by looking to out-of-state authorities in reaching its decision. ECF No. 18 at 17; ECF No. 17 at 8. This Court, however, finds the *Marriott* decision informative. For instance, in the same way that Section 5 of the FTC Act bars "unfair or deceptive acts or practices in or affecting commerce," *In re Marriott*, 2020 WL 6290670, at \*10, the MCPA likewise bars "[u]nfair, abusive, or deceptive trade practices," including those plausibly alleged here, as discussed previously. *See* Md. Code Ann., Com. Law § 13-301. As the law further makes clear, "[i]t is the intention of this legislation to set certain minimum statewide standards for the protection of *consumers* across the State." *Id.* § 13-102 (emphasis added).[5]

Thus, the Court finds that Plaintiff has at this stage, made a plausible showing for negligence under the statute or ordinance rule.

Additionally, under Maryland law, negligence claims for purely economic harms are generally barred, unless there is an "intimate nexus" between the parties. *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 534 (1986). An "intimate nexus" is established by "contractual

---

[5] *See also, e.g., Mitchell Tracey v. First Am. Title Ins. Co.*, 950 F. Supp. 2d 807, 811 (D. Md. 2013) ("The purpose of Title 27 is 'to regulate trade practices in the business of insurance ... by defining ... all trade practices in the business of insurance in the State that are unfair methods of competition or unfair or deceptive acts or practices and by prohibiting those trade practices.' … The Plaintiffs, as insurance purchasers, were allegedly subjected to unfair trade practices by the defendant insurance company, and are thus within the class of persons for whose protection or benefit the statute was enacted.").

privity or its equivalent," *id.* at 534–35, which "ensures that the plaintiff and defendant were sufficiently close to justify a finding of tort duty running from the defendant to the plaintiff," *In re Marriott*, 2020 WL 6290670, at *6. Courts have found that "the reason for the privity requirement is to 'limit the defendant's risk exposure to an actually foreseeable extent,' allowing a defendant to control the risk to which he or she is exposed." *Id.* (quoting *Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 294 (2006)).

Defendants argue that because Plaintiff asserts only economic damages, she must be able to demonstrate an "intimate nexus" between herself and Defendants, which she cannot do. ECF No. 8-1 at 22; ECF No. 9-1 at 8–9. Defendants further charge that Plaintiff has not alleged that the companies made any reliance-inducing promises to her or provided anything to Plaintiff that would reflect more than an "arms-length relationship" between the parties. ECF No. 18 at 19. In response, Plaintiff argues that although the parties were not in contractual privity, Yardi collected money directly from Plaintiff, and Yes sent her bills pertaining to her tenancy. ECF No. 16 at 35. As such, Plaintiff asserts that the relationship contains sufficient "linking conduct" that establishes a clear relationship with Defendants. *Id.*

The test for determining whether a Plaintiff may avoid dismissal via the economic loss doctrine is a purpose-based one. Any "linking conduct" must be "enough to show the defendant knew or should have known of the plaintiff's reliance"—and thus, "context is critical." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 620–21 (2017). This is the "main consideration" of the "intimate relationship" analysis, as it "concomitantly allows the defendant to control the risk of its exposure to that plaintiff." *In re Marriott*, 2020 WL 6290670, at *6.

In light of these considerations, the Court finds that Plaintiff has plausibly alleged a sufficient nexus between herself and the Defendants. Although she was not in a contractual relationship with Defendants, Plaintiff has sufficiently alleged that the companies played a central role in her affairs with her landlord, such that Defendants were able to adequately "control the risk of [their] exposure to that plaintiff." *Id.* More specifically, Plaintiff relied on the validity of Defendants' collection activities and the provision of certain fees, all of which Plaintiff has plausibly alleged were unlawful.

In light of the foregoing, Plaintiff's claim for negligence is also plausibly alleged.

### 2. Money Had and Received

Defendants next argue that Plaintiff has not adequately pleaded a claim for money had and received, because the tort is not available to Plaintiff under these facts and because it would not be equitable to require Defendants to remit the fees in question to Plaintiff. ECF No. 8-1 at 23; ECF No. 9-1 at 10.

The common law tort for money had and received "lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." *Bourgeois v. Live Nation Ent., Inc.*, 430 Md. 14, 46 (2013) (internal quotations and citation omitted) (certifying that money had and received remains a viable cause of action in Maryland). In answering questions certified from the United States District Court for the District of Maryland, the Maryland Court of Appeals found that an action for money had and received may lie "to recover money paid" on an illegal contract that is "not yet fully consummated." *Id.* at 59. However, generally, the claim is not permitted "to recovery money paid under a fully executed contract," where the parties are "in pari delicto," meaning in a case of equal or mutual fault, "and neither should be able to take advantage of the illegality." *Id.*

20

First, Defendants argue that the claim is inappropriate because it is suitable in only a "handful" of scenarios, none of which applies here. ECF No. 18 at 20. Defendants cite the Maryland Court of Appeals decision in *Bourgeois*, which holds that the claim is available when (1) the plaintiff paid the defendant based on a mistake of fact or law; (2) the defendant obtained the money by fraud or false pretenses; (3) the defendant obtained the money as the result of an unexecuted illegal contract; or (4) the defendant obtained the money to a fully executed but illegal contract, because it charges usurious interest. *Bourgeois*, 430 Md. 47–48.

Plaintiff notes, however, that the district court in *Bourgeois* read the state high court's decision differently, finding that the Court of Appeals "discussed only one genre of 'special circumstances'"—usury—where a completed contract could be challenged under money and had and received. *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 450 (D. Md. 2014), *as corrected* (Mar. 20, 2014). The district court, plaintiffs assert, provided additional situations where the claim may stand, including as applicable to Plaintiff's case. *Id.*

And, indeed, as the district court explained, "other Maryland cases have articulated various factual scenarios" that would permit claims for money had and received to move forward when there are completed contracts, on the understanding that the parties to such claims would *not* be in pari delicto. *Id.* Critically "Maryland courts have recognized that when a transaction involves violation of a statute and the plaintiff is one of a class for whose protection or benefit the statute was enacted, he may be regarded as not in pari delicto." *Id.* (cleaned up); *see also Mitchell Tracey*, 950 F. Supp. 2d at 811 (holding same).

As discussed previously, Plaintiff has plausibly alleged that the MCPA, at minimum, was enacted to protect consumers like her, and as such, the money had and received claim is sufficiently alleged on those grounds.

Defendants also assert that Plaintiff's claim for money had and received should be barred because finding otherwise would be inequitable. ECF No. 8-1 at 23–24; ECF No. 9-1 at 10. Defendant Yardi argues that it provided a service to Plaintiff, of which she availed herself, and thus, forcing Defendants to remit the service fees they earned back to Plaintiff would be tantamount to requiring the companies to work for free. ECF No. 8-1 at 24. Defendant YES Energy argues that it was compensated not by tenants, such as Plaintiff, but by landlords, including Plaintiff's landlord, and as such, compensating Plaintiff now would amount to an unjust windfall. ECF No. 9-1 at 10. Plaintiff responds by arguing that the service fee Defendants collected were illegal fees under the MCALA, MCDCA, and MCPA, and, further, Yardi and YES provided services to the landlords they contracted with, not the tenants, like Plaintiff, from whom they collected monthly rent and other charges, along with any additional fees. ECF No. 16 at 39–40.

Again, *Bourgeois* is informative. Responding to a similar claim about the inequities of permitting a money had and received claim to move forward, the *Bourgeois* court contrasted the situation at hand—involving service fees charged to customers buying concert tickets—with a prior case wherein plaintiffs sought to recoup the entirety of 18 months of rent when they learned that their landlords had not been properly licensed. *Compare Bourgeois*, 3 F. Supp. at 453 *with Citaramanis v. Hallowell*, 328 Md. 142, 613 A.2d 964 (1992). As the court found, "*CitaraManis* might have been on point if Bourgeois were seeking to recover the face value of the ticket solely because of Ticketmaster's failure to obtain a license." *Bourgeois*, 3 F. Supp. at 453. However, "plaintiffs in *CitaraManis* failed to provide any evidence that they paid more than they would have in the absence of the illegality; the illegality caused them no harm," whereas, the claim at issue in *Bourgeois* rested "on the express allegation that the ticket fees [plaintiff] paid in excess

of the face value of the ticket price were illegal, and therefore, the illegal actions of defendants caused him financial harm." *Id.* The same is true here.

Further, while Defendant Yardi emphasizes that it provides a valuable service to tenants such as Plaintiff, for which it should be paid, Defendants are fundamentally service providers for landlords, with whom they contract, not tenants like Plaintiff. *See* ECF No. 8-1 at 14. The landlord clients that Defendants contract with benefit from faster payments—something Defendants themselves highlight in their marketing. *See* ECF No. 6 ¶ 31. The Amended Complaint plausibly alleges that "Yardi advertises to landlords that its payment system will '[c]ollect rent more quickly!'" *Id.* It also "advertises that '[c]ollecting rent online is more convenient, more efficient and cuts down on trips to the bank.'" *Id.* Likewise, as the court in *Alexander* observed, the fact that "consumers who pay online or over the phone received the satisfaction of immediate payment and posting," the reality is that "alternative payment options are likely more cost-effective and less time-consuming" for Defendants, too. *Alexander*, 23 F.4th at 379.

YES Energy likewise argues that a claim for money had and received is not appropriate because YES is paid by *landlords*, who "may elect at their discretion" to transfer those costs to tenants—and therefore, YES Energy does not actually receive any funds from tenants directly. ECF No. 9-1 at 4–5. YES Energy points to *Cilano*, the case involving a property manager alleged to be a debt collector for collecting condo association dues. The *Cilano* court found that the plaintiff could not seek restitution for dues paid the property manager where the manager had received "any benefits (such as retention of some portion of sums collected)" through its "contracts with the condominium associations." *Cilano*, 2020 WL 12744576, at *4.

Yet, as Plaintiff notes, YES Energy has itself asserted that it "collected" approximately $500,000 from Maryland residents for the period of the proposed class action (for the period on or after October 4, 2018). ECF No. 1 ¶ 18. Thus, at minimum, more factual development regarding YES Energy's business model is necessary. Further, the Court sees a distinction where, as here, YES Energy's "Administration Fee" is purported to be separately itemized and charged.

Accordingly, the claim will survive at this juncture.

### 3. Unjust Enrichment

Defendants next argue that Plaintiff's common law claim for unjust enrichment should fail because, again, it would be unjust for Plaintiff to obtain the benefits of Defendants' services for free or because the Plaintiff did not technically pay fees directly to Defendants. ECF No. 8-1 at 24; ECF No. 9-1 at 10. Plaintiff argues that she has met the burden of alleging unjust enrichment and that the true unjust action would be to allow Defendants to benefit from their unlawful behavior. ECF No. 16 at 41–43.

Under Maryland law, unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances that would render it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (Md. 2007).

Here, at minimum, Plaintiff has plausibly alleged that Defendants obtained unlawful service fees from Plaintiff in contradiction with Maryland's consumer protection and licensing statutes. As such, it stands to reason that, if Plaintiff is ultimately meritorious on her statutory claims, Defendants should "not [be] permitted to profit by [their] own wrong." *Linton v. Consumer Prot. Div.*, 467 Md. 502, 519 (2020) (internal quotations and citation omitted).

24

This analysis extends, at this stage, to Plaintiff's claims regarding harms from Defendants' alleged failure to obtain appropriate business licensing under the MCALA. While Maryland courts have held that lack of licensure *alone* may not entitle plaintiffs to damages, a plaintiff may be able to recover for "actual loss or injury caused by the lack of licensure." *Galola v. Snyder*, 328 Md. 182, 185–86 (1992). Here, the Plaintiff has alleged that they were charged fees despite the fact that Defendants "cannot charge any fees for debt collection in Maryland," because they are "not licensed" as collection agencies. ECF No. 6 ¶¶ 5–6. As such, Plaintiffs have plausibly alleged that Plaintiff's injury stems from Defendants' failure to be licensed.

Further, as noted previously, YES Energy's argument that its fees are actually paid by landlords, not tenants, is not dispositive at this stage.

Thus, the Court will not dismiss the claim.

### C. Declaratory Relief

Finally, in the first count of their Amended Complaint, Plaintiff requests declaratory relief under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406. Although neither party addresses these claims in subsequent briefings, the Court will do so here.

A state-court declaratory judgment action removed to federal court is treated as though the plaintiff had invoked the Federal Declaratory Act, 28 U.S.C. § 2201. *Williams v. Selene Fin., LP*, No. CV DKC 19-1358, 2021 WL 3784890, at *4 (D. Md. Aug. 26, 2021). A declaratory judgment is a form of relief, not an independent claim on its own, and as such, declaratory relief requires an independent basis for jurisdiction. *See Artis v. T-Mobile USA, Inc.*, No. CV PJM 18-2575, 2019 WL 1427738, at *5 (D. Md. Mar. 29, 2019). However, courts have determined that declaratory relief is not available to plaintiffs under the MCDCA or the MCPA. *Id.* (citing *Bradshaw v. Hilco Receivables*, LLC, 765 F. Supp. 2d 719, 733 (D. Md. 2011)). Further, when a

request for declaratory relief is "adequately and directly addressed" in the other counts of a complaint, and "would be duplicative of claims already alleged," then "dismissal is warranted." *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824 (D. Md. 2015).

Accordingly, here, because declaratory relief is not available under the Maryland consumer protection statutes, and because Plaintiff's common law claims adequately and directly address the requested relief in the claim for declaratory judgment, there is no basis for the Court to grant declaratory relief in this matter. This count is denied.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Yardi's Motion to Dismiss, ECF No. 8, is granted in part and denied in part, and Defendant YES Energy's Motion to Dismiss, ECF No. 9, is denied. A separate Order follows.

Date: <u>September 30, 2022</u>                    ___/s/_____

GEORGE J. HAZEL
United States District Judge